DECISION AND JUDGMENT ENTRY
{¶ 1} This matter is before the court on appeal of the May 5, 2006 judgment of the Lucas County Court of Common Pleas, Juvenile Division, which terminated the parental rights of appellant, Rashawanda F., and awarded custody of her minor child, Norman F., to Lucas County Children's Services ("LCCS"). For the following reasons, we affirm the trial court's judgment.
 {¶ 2} Appellant, Rashawanda F., is the natural mother of Norman F., born in January 2004. On January 26, 2004, LCCS filed a complaint in dependency and motion for shelter care hearing. The complaint alleged that appellant had a history of substance abuse and of leaving her two other minor children in the care of relatives. The two children were found to be dependent and legal custody was awarded to a relative due to appellant's alleged failure to complete the case plan services. The complaint also alleged that appellant did not have adequate supplies to care for Norman. A shelter care hearing was held and temporary custody was awarded to a relative.
 {¶ 3} On February 26, 2004, a mediation was held and appellant consented to a finding of dependency. The case plan, amended on February 6, 2004, to include Norman, provided for the following services: drug and alcohol rehabilitation; a domestic violence group; a parenting program; an anger management program; and a mental health assessment.
 {¶ 4} On April 5, 2005, temporary custody was transferred to LCCS; Norman was then placed with Ester S. who had legal custody of Norman's two half-siblings. On May 6, 2005, LCCS filed a motion for permanent custody.
 {¶ 5} On April 13, 2006 a hearing on the motion was held and the following evidence was presented. Tondra Ezell testified that she worked at Compass Drug and Alcohol Rehabilitation Center. Ezell testified that she worked individually with appellant from June through December 2005; the sessions were one-on-one because appellant was hearing impaired and needed an interpreter. Ezell stated that appellant's main "drug of choice" was crack cocaine. Ezell testified that appellant successfully completed the program but it appeared that she really did not understand the concepts that were being taught. Ezell testified that appellant tested positive for crack in August 2005.
 {¶ 6} Dawn Bieniek testified that she provided mental health services for appellant at Harbor Behavioral Healthcare. Following a diagnostic assessment, Bieniek recommended that appellant be referred to an anger management group and a domestic violence group. Bieniek stated that she was approached by the group leader and informed that appellant was not grasping the concepts that were shared in those groups and that she did not appear to be benefiting from them. Bieniek, who knows sign language, then counseled appellant one-on-one with the materials from the groups. Bieniek testified that even in individual counseling appellant had difficulty understanding the concepts; particularly, appellant did not understand why, in a domestic violence situation, she would need to take action and what she needed to do to keep her family safe.
 {¶ 7} Bieniek testified that the classes typically run at least eight to ten sessions but that appellant stopped coming after only a "few" sessions. Bieniek assessed her progress as minimal.
 {¶ 8} Norman's caregiver, Ester S., testified next. She stated that she has Norman in her home and "full custody" of his two half-sisters. Ester S. testified that appellant came to her home to visit Norman and his sisters until appellant "went off one day. Ester S. stated that appellant jumped up off the couch, was yelling, wanted to hit her and "jump on" her, she threw a roll of paper towels at her, and that she really upset the children, including Ester S.'s granddaughter. Ester S. called the police and informed them that she did not want appellant in her home again. Ester S. testified that there was a prior incident where she called the police when appellant got angry and got a baseball bat to break Ester S.'s window. Following the last incident, Ester S. requested that visitation be transferred to LCCS.
 {¶ 9} During cross-examination, Ester S. testified that appellant visited the children every Thursday but that she sometimes came more frequently. When appellant was at Ester S.'s home she paid attention to and had a relationship with the children. However, Ester S. stated that Norman would cry whenever appellant held him.
 {¶ 10} The final witness to testify was LCCS caseworker, Vivian Davis. Davis testified that she has been assigned to the case since 2002. Davis testified that appellant's case plan consisted of substance abuse services, anger management, domestic violence, and parenting. Davis indicated that appellant did not adequately perform the anger management component. With regard to domestic violence, Davis stated that appellant was referred for services due to the alleged father's domestic violence history. Davis testified that appellant could not qualify for parenting classes until she resolved her substance abuse issues. Davis testified that after appellant completed treatment in December 2005, she set up an intake in March 2006. Appellant arrived at the first group meeting and was told that she was one hour early; she left, said she would come back, but never returned. Appellant did attend one parenting class two days prior to the hearing.
 {¶ 11} According to Davis, appellant's housing had been an issue. Davis stated that appellant currently lives in an efficiency unit where children are not permitted. Davis felt that appellant was not aware of what type of housing was appropriate. Davis stated that appellant had moved approximately six times since her case plan had been opened and that two of her homes had rats. Davis also indicated that appellant did not have adequate furniture or other supplies necessary to care for Norman.
 {¶ 12} With regard to appellant's overall performance of her case plan, Davis testified that although appellant completed the substance abuse component, there were issues with her comprehension. Davis was also unsure of whether appellant understood the concept of anger management and that appellant was not aware that shoving constituted domestic violence. Davis ordered a psychological evaluation based on her belief that appellant had difficulty understanding concepts; appellant missed both scheduled evaluations.
 {¶ 13} Davis testified that Norman's alleged father, Fred R., was notified, by a letter sent to CCNO, that he had been identified as the alleged father and needed to contact LCCS. Fred was in the corrections center for drug related charges. Davis testified that at that time appellant was associating with Fred; this was problematic due to his drug usage. Appellant admitted writing to Fred while he was in CCNO and she knew his release date. Fred never contacted LCCS.
 {¶ 14} Davis stated that her recommendation is that LCCS be awarded permanent custody and that Ester S. is a possibility for adoptive placement. Davis stated that Norman has special medical needs that have been addressed by Ester S.
 {¶ 15} During cross-examination, Davis acknowledged that appellant had been sober for the preceding eight months. Davis agreed that appellant has had only two residences since March 2004. Davis also admitted that the last known contact between appellant and Fred R. was in November 2004.
 {¶ 16} Davis was then questioned regarding why it was not in Norman's best interest to grant Ester S. legal custody like she has over the other children. Davis responded that due to his tender age he deserves a permanent family. Davis also stated that because Ester S. is on a fixed income she would have access to more benefits for Norman. Davis also noted that Norman has special needs that require more financial resources.
 {¶ 17} At the conclusion of the hearing, the trial court found that clear and convincing evidence was presented to award LCCS permanent custody of Norman for adoptive placement. The court stated that LCCS made reasonable efforts to prevent Norman's continued removal from the home and that appellant had not followed through with the services that were provided. The court further noted that appellant does not have appropriate housing for the child. These findings were included in the trial court's May 5, 2006 judgment entry from which appellant timely appealed.
 {¶ 18} Appellant now raises the following two assignment of error:
 {¶ 19} "I. Assignment of Error No. 1: Two trial court findings of fact were either incorrect or incomplete and thus against the manifest weight of the evidence.
 {¶ 20} "II. Assignment of Error No. 2: A finding under Section 2151.414(D)(4) that permanent custody is in the best interest of a child is improper when an award of legal custody is possible."
 {¶ 21} In her first assignment of error, appellant contends that the trial court's findings were against the manifest weight of the evidence because two of the findings were either incorrect or incomplete.
 {¶ 22} We first note that the disposition of a child determined to be dependent, abused or neglected is controlled by R.C. 2151.353 and the court may enter any order of disposition provided for in R.C. 2151.353(A). However, before the court can grant permanent custody of a child to the agency, the court must determine: 1) pursuant to R.C. 2151.414(E) that the child cannot or should not be placed with one of his parents within a reasonable time; and 2) pursuant to R.C. 2151.414(D), that the permanent commitment is in the best interest of the child. R.C. 2151.353(A)(4). R.C. 2151.414(E) provides that, in determining whether or not a child can or should be placed with a parent within a reasonable time, the court shall consider all relevant evidence. If, however, the court determines by clear and convincing evidence that any one of sixteen factors listed in the statute exist, the court must find that the child cannot be placed with the parent within a reasonable time. The trial court found that R.C. 2151.414(E)(1) and (10) applies to Norman, they provide:
 {¶ 23} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 24} " * * *
 {¶ 25} "(10) The parent has abandoned the child."[1]
 {¶ 26} In determining the best interest of the child, R.C. 2151.414(D) directs that the court shall consider all relevant factors, including but not limited to:
 {¶ 27} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 28} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 29} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 30} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 31} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 32} As set forth in the above-quoted statutory sections, the trial court's findings must be supported by clear and convincing evidence. Clear and convincing evidence is that proof which establishes in the mind of the trier of fact a firm conviction as to the allegations sought to be proved. Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 33} Appellant first argues that the trial court's finding that "appellant had a relationship with Mr. R[.] at the time of trial" was not supported by the record. LCCS contends that the court's finding was "substantially correct" in that appellant was involved with Fred R. for the majority of time that the case was pending.
 {¶ 34} In its May 5, 2006 judgment entry the court stated: "She continued to be with Mr. R[.] who had a long history of drug and alcohol abuse." Looking at the statement in the context of the entire paragraph, it is apparent that the court was chronicling the timeline of the events. In the next sentence, the court references appellant's positive drug test in October 2004. We do acknowledge that, according to the testimony presented, LCCS had no evidence that appellant had contact with Fred after November 2004.
 {¶ 35} Appellant next asserts that the trial court's statement that appellant tested positive for crack cocaine in October 2004, is incomplete in that it fails to acknowledge her sobriety for nine months preceding the hearing. We note that the trial court did acknowledge that appellant successfully completed the Compass program, but that she had difficulty understanding the concepts taught in the program.
 {¶ 36} Upon careful review of the record in this case, we conclude that the trial court's decision granting permanent custody of Norman to LCCS was supported by competent, credible evidence. LCCS made reasonable efforts to reunify appellant with Norman and LCCS presented ample testimony regarding the services it provided to appellant. While we do acknowledge that appellant has had success with her substance abuse issues, at the hearing testimony was presented demonstrating that appellant has still failed to remedy all the issues which caused Norman's removal. First, although appellant completed the substance abuse program, concerns were noted regarding her comprehension of the concepts that were taught. Next, appellant only completed a small number of the anger management and domestic violence classes and, as with the substance abuse counseling, she had difficulty with comprehension. Appellant also failed to follow through with the parenting classes and she failed to attend two scheduled psychological evaluations. Finally, appellant does not have appropriate housing or adequate supplies for Norman.
 {¶ 37} Accordingly, the trial court did not err when it found that awarding LCCS permanent custody was in Norman's best interest. Appellant's first assignment of error is not well-taken.
 {¶ 38} In appellant's second assignment of error, she contends that the trial court erred in awarding LCCS permanent custody when legal custody was a viable option. Appellant asserts that R.C. 2151.414(D)(4), as quoted above, requires that the court determine that no remedy other than permanent custody exists prior to the termination of parental rights.
 {¶ 39} As cited by LCCS, the Supreme Court of Ohio has recently addressed this issue in In re Schaefer, 111 Ohio St.3d 498,2006-Ohio-5513. In Schaefer, the court held that R.C. 2151.414(D) "does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors." Id. at ¶ 64.
 {¶ 40} In the present case, looking at the factors outlined in R.C. 2151.414(D), we find that Norman has been in the custody of others since days after his birth. We note that Norman has special needs that have been addressed by Ester S., his current caregiver. Norman has bonded with her and she has expressed an interest in adopting him. Finally, we acknowledge Norman's need for secure and permanent placement. Based on these facts, we find that the trial court did not err in awarding LCCS permanent custody even though awarding legal custody to Ester S. may have been possible. Appellant's second assignment of error is not well-taken.
 {¶ 41} On consideration whereof, we find that substantial justice was done the party complaining and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Mark L. Pietrykowski, J., Arlene Singer, P.J., William J. Skow, J., CONCUR.
[1] The court found that Fred R. had abandoned Norman.