OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of Leslie Smith, filed July 13, 2007. On October 29, 2003, A.S. was hospitalized for severe failure to thrive and she showed signs of malnutrition. Montgomery County Children's Services ("MCCS") subsequently filed a complaint alleging that A.S. was neglected and dependent. A.S. was only ten years old, weighed twenty-seven pounds, and, *Page 2 
according to MCCS, had the physical appearance of a toddler. On February 25, 2004, the court adjudicated A.S. a dependent and neglected child based upon severe malnutrition and her mother's failure to seek proper treatment for her. Temporary custody of A.S. was subsequently granted to MCCS. A.S. was then placed in foster care and a case plan was developed by MCCS which provided objectives for Smith so that reunification with her daughter might be possible. The objectives of this case plan required Smith to follow up on A.S.'s medical care, participate in the child's medical appointments, complete parenting classes, and complete a psychological and parenting assessment.
 {¶ 2} On August 12, 2004, MCCS filed a motion for permanent custody of A.S. The affidavit of Lesley Keown, the caseworker in this matter, was filed in support of this motion. Ms. Keown testified that permanent custody with MCCS was in the child's best interest due to the significant improvement in her health and weight gain during the period of temporary custody. Specifically, A.S. had gained forty pounds and grew ten inches while in the care of her foster family for only sixteen months. Ms. Keown also testified that Smith had initially reported that A.S.'s appearance was caused by an eating disorder and food allergies. However, medical evaluations done by Dr. Ralph Hicks and Dr. Cheryl Gill established that the child's weight and growth issues were a result of chronic malnutrition and that no medical condition was present that would prevent her from appropriately eating and digesting her food. Finally, Ms. Keown noted that A.S. was an adopted child and that Smith has four biological children in the home, all of whom are physically healthy. For these reasons, MCCS asserted that granting it permanent custody of A.S. was in the child's best interest. *Page 3 
 {¶ 3} On November 1, 2005, a Magistrate's Decision was filed wherein the court found it in the best interest of the child to grant permanent custody to MCCS. The court found that MCCS had made reasonable efforts to prevent the removal of the child from the child's home; to eliminate the continued removal of the child from the child's home; and, make it possible for the child to return home. The court also found that no suitable relatives or non-relatives existed to care for the child. The magistrate found that Smith, despite completion of her case plan, had failed to respond appropriately to the services provided by MCCS by demonstrating sufficient parenting skills. Further, her attitude indicated an unwillingness to remedy the conditions that caused the child to be placed outside the home. Also, the court found Smith was unwilling to prevent the child from suffering physical, emotional, sexual, or mental abuse or neglect, and that she repeatedly withheld medical treatment or food when the means were available for the provision of the same. Specifically, the court based its decision on the fact that Smith refused to take any responsibility for the malnutrition of A.S. For these reasons, the court concluded that reunification of the child with Smith was not possible within a reasonable period of time because she failed to recognize her own parenting deficiencies and showed no indication that she would ever recognize or address those deficiencies.
 {¶ 4} On November 16, 2006, counsel for Smith filed objections to the Magistrate's decision. On June 15, 2007, the juvenile court overruled these objections and adopted the Magistrate's Decision as its own. It is from this decision that Smith appeals. *Page 4 
 {¶ 5} Smith's Sole Assignment of Error is as follows:
 {¶ 6} "THE JUVENILE COURT ERRED IN OVERRULING THE OBJECTIONS TO THE MAGISTRATES' REPORT."
 {¶ 7} Smith argues that the juvenile court erred in finding clear and convincing evidence that it is in the best interest of A.S. to grant permanent custody to MCCS because she completed the case plan as given to her by MCCS. The case plan required Smith to complete a parenting and psychological assessment, and consistently visit the child. The juvenile court found that she did complete her case plan, but that this alone was not enough to grant her permanent custody.
 {¶ 8} R.C. 2151.414(B)(1) establishes the applicable test for a juvenile court to rule on a motion for permanent custody filed by a public children services agency. The statute states:
 {¶ 9} "The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 10} "(a) * * * the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 11} "(b) the child is abandoned.
 {¶ 12} "(c) the child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 13} "(d) The child has been in the temporary custody of one or more public *Page 5 
children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 14} R.C. 2151.414(B)(1)(a) served as the basis for granting MCCS's motion for permanent custody. Thus, the juvenile court found clear and convincing evidence that (1) it was in the best interest of A.S. to grant permanent custody to MCCS and (2) A.S. could not or should not be placed with Smith within a reasonable time.
 {¶ 15} Clear and convincing evidence must exist to support a permanent custody award. In re A. J. S., Miami App. No. 2007 CA 2, 2007-Ohio-3433, at _21. Clear and convincing evidence is defined as, "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." Id., citing In re Estate of Haynes (1986), 25 Ohio St.3d 101, 103-104,495 N.E.2d 23. In reviewing the validity of the juvenile court's decision, an appellate court must examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy this degree of proof. Id., citing State v. Schiebel (1990),55 Ohio St. 3d 71, 74, 564 N.E.2d 64. If the juvenile court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," an appellate court may not reverse the judgment. Id., quoting Schiebel, 55 Ohio St.3d at 74.
 {¶ 16} R.C. 2151.414(D) sets forth the factors a court must consider when determining whether granting permanent custody to a public children's services agency is in the best interest of the child. That subsection states: *Page 6 
 {¶ 17} "In determining the best interest of a child at a hearing held pursuant to division (A) of this section * * *, the court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 18} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 19} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 20} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 21} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 22} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 23} The court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors. In Re Schaeffer (2005),111 Ohio St.3d 498, 505, 857 N.E.2d 532, 538. No one element is given greater weight than the others. Id.
 {¶ 24} Here, there is competent evidence supporting the juvenile court's finding that it was in the best interest of A.S. to grant permanent custody to MCCS. A.S. was placed in the care of Smith around age one, and by age ten weighed only twenty-seven *Page 7 
pounds. After only sixteen months in the care of the foster family A.S. gained forty pounds and grew ten inches. No medical evidence existed to corroborate Smith's continuing claims that A.S. suffered from an eating disorder or food allergy. Thus, the court concluded that Smith did not appropriately feed A.S.
 {¶ 25} In reviewing the child's current placement, the court noted that A.S. was very well bonded with her foster family, the family was able to provide appropriate care, and that there was a reasonable expectation of adoption. Finally, the Guardian Ad Litem, Edward Neuman, recommended that permanent custody be granted to MCCS. Mr. Neuman echoed the same concerns as Ms. Keown, that Smith refused to accept her role in her child's malnutrition and thus, A.S. would remain at great risk of malnutrition if reunification occurred. Therefore, we find that clear and convincing evidence existed that it was in the best interest of A.S. for permanent custody to be granted to MCCS.
 {¶ 26} Next, R.C. 2151.414(E) sets forth the elements required in order to satisfy the determination that a child cannot or should not be placed with his parents within a reasonable time. This subsection states:
 {¶ 27} "In determining * * * whether a child cannot be placed with either parent within a reasonable time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 28} "(1) Following the placement of the child outside the child's home and *Page 8 
notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
 {¶ 29} Again, when A.S. was removed from the home of Smith, she was ten years old and weighed approximately twenty-seven pounds. The child was hospitalized for severe failure to thrive and showed signs of malnutrition. Despite Smith's claims of an eating disorder, allergies and other various ailments, Dr. Hicks could not uncover any medical cause for the child's lack of development. Instead, Dr. Hicks diagnosed A.S. as malnourished because she was not receiving enough food. After being placed in foster care for sixteen months A.S. weighed 65 pounds, up approximately forty pounds. Smith was unwilling to recognize her deficiencies which placed A.S. at risk despite being confronted with all of this information. For these reasons, the court found that Smith failed to remedy the conditions that caused A.S. to be removed from the home. Thus, competent evidence existed supporting the juvenile court's finding that A.S. could not or should not be placed with Smith within a reasonable time.
 {¶ 30} Smith's Sole Assignment of Error is overruled. *Page 9 
 II {¶ 31} Smith's Sole Assignment of Error having been overruled, the judgment of the juvenile court is Affirmed.
 WOLFF, P.J. and BROGAN, J., concur. *Page 1