[Cite as *In re L.D.*, 2011-Ohio-5799.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN THE MATTER OF: | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| L.D., A.D. AND T.C. | Hon. William B. Hoffman, J.<br>Hon. Julie A. Edwards, J. |
| DEPENDENT CHILDREN | |
| | Case No. 11CA000017<br>and 11CA000018 |
| | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Guernsey County Court of Common Pleas, Juvenile Division, Case No. 10JC00368 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | November 3, 2011 |
| APPEARANCES: | |

For Appellee
Guernsey County Children Services

AMBER D. WOOTTON
Assistant Prosecuting Attorney
139 W. 8th Street
Cambridge, Ohio 43725

For Appellant-Mother

MICHAEL GROH
919 Wheeling Avenue
Cambridge, Ohio 43725

For Appellant-Father

RONALD C. COUCH
121 W. 8th Street
Cambridge, Ohio 43725

*Hoffman, J.*

{¶ 1}  In Guernsey App. No. 11CA000017, Appellant Lisette Danforth ("Mother") appeals the May 25, 2011 Journal Entry entered by the Guernsey County Court of Common Pleas, Juvenile Division, which terminated her parental rights, privileges, and responsibilities with respect to her minor children and granted permanent custody of the children to Appellee Guernsey County Children Services ("GCCS").  In Guernsey App. No. 2011CA000018, Appellant Scott Danforth ("Father") appeals the same journal entry with respect to the termination of his parental rights, privileges, and responsibilities.

STATEMENT OF THE FACTS AND CASE

{¶ 2}  Mother is the biological mother of L.D. (DOB 12/14/06), A.D. (DOB 1/6/07), and T.C. (DOB 9/30/09).  Father is the biological father of L.D. and A.D.[1]  On June 11, 2010, GCCS filed a motion for emergency custody and a complaint alleging the three minor children were neglected and dependent.  These filings resulted after L.D. was found wandering alone outside in the rain.  At the adjudicatory hearing on August 13, 2010, Mother and Father admitted the allegations of dependency and the trial court adjudicated the children dependent.  GCCS dismissed the allegations of neglect.  Following a dispositional hearing, the three children were placed in the temporary custody of GCCS.

{¶ 3}  GCCS filed Motion for Permanent Custody on February 9, 2011.  The trial court conducted a hearing on the motion on May 16, 2011.

{¶ 4}  The following evidence was adduced at the hearing.  Dr. Gary Wolfgang, a licensed psychologist, conducted a psychological evaluation of Mother in July, 2010.

---

[1] The biological father of T.C. is not a party to this appeal.

Dr. Wolfgang noted Mother provided a great deal of contradictory information during the evaluation. Mother denied using cocaine, but also reported she had a positive cocaine screen, and made numerous other suggestions she was a drug and alcohol user. Mother blamed the children's removal on her confused state of mind after she took the prescriptions Celexa and Klonopin. Dr. Wolfgang noted he had never heard of confusion as a side effect of either of these medications. Mother reported other contradictory information concerning her prior mental health treatment and her Mother's involvement in her life. Dr. Wolfgang expressed concerns regarding this contradictory information, emphasizing Mother tended to blame her problems on other people. Dr. Wolfgang recommended ongoing mental health treatment and found Mother's version of the events surrounding the removal of her children "virtually incredible".

{¶ 5} Kim Feldner, a family support specialist at GCCS, scheduled and supervised or monitored nearly all of the visits between the children and Mother and Father. Feldner testified Mother had eighty-one visits scheduled with the children over the duration of the case, however, Mother had either cancelled or no showed for nineteen of those visits. All of Mother's visits were supervised. Feldner testified, on occasion, Mother's visits with the children would go well, but most of the time, Mother's behavior was erratic, robotic, and she was not engaged with the children. During Mother's last visit with the children on April 13, 2011, Mother's mother ("Grandmother") was present. Feldner observed Grandmother tell the children she was returning to Florida, however, Feldner did not observe Mother do the same. Mother told Feldner while she and A.D. were in the restroom, she ("Mother") told A.D. she was returning to Florida, and the child was "a wreck". Feldner described Mother as discreet and evasive

whenever she was asked about where or with whom she was staying. In February, 2011, Mother cancelled five of her seven scheduled visits with the children. Mother made no attempt to make arrangements for phone contact during her last visit on April 13, 2011. One week prior to the permanent custody hearing, Mother requested the court allow her to have phone contact with the children. Mother advised Feldner she would not be attending the permanent custody hearing.

{¶ 6} Feldner testified Father had a total of twelve visits with the children, and cancelled only one. Father's last visit with the children was on September 9, 2010, at which time he told the children he was moving to Florida. Although Father told Feldner he would call once he was settled in Florida, Feldner had no further contact with him.

{¶ 7} Elissa Mallett, the ongoing caseworker, testified she became involved with the family in May, 2010. Mallett developed a case plan for Mother, however, Mother had been largely noncompliant. At the time of the permanent custody hearing, Mother had completed a mental health assessment, but had not followed the recommendations. Mother lost her housing in August, 2010, and had not established new housing at the time of the hearing. Due to noncompliance, Mother lost her Department of Job and Family Services benefits. Mother had no financial means of support. Mother did sign all releases of information, and provided the name of one possible relative for placement. Mother had not completed her parenting education classes.

{¶ 8} Grandmother and her husband requested custody of the children, but subsequently withdrew the request due to health issues. Neither Mother nor Grandmother provided names of any other relatives for placement. Mallet attempted to meet with Mother and scheduled meetings at the locations where Mother indicated she

was staying, however, Mother never appeared for these appointments. Mother refused to provide Mallett with the addresses of friends with whom she was staying. Mother did meet Mallett at GCCS offices. After losing her Department of Job and Family Services benefits for not completing classes, Mother did not establish an alternative source of income. Mother did not complete the Incredible Years class which was required, although she received information in writing of said class.

{¶ 9} Mallet also established a case plan for Father. The case plan required Father to complete a mental health assessment, which Father did not do. Instead, Father provided Mallett with the address of the business where he allegedly completed an assessment. The address was incorrect. Father did not complete parenting classes, Father provided Mallett with certificates from a parenting class in which he participated in Florida.

{¶ 10} The case worker stated she had fairly consistent contact with Mother throughout the pendency of the matter, however, her last contact with Father, prior to the permanent custody hearing, was three or four weeks after his last visit with the children. Father's mother had telephoned Mallett at which time Mallett had requested to speak with Father. Mallett had not been able to make contact with Father since that time. Mallet attempted to contact by phone and mail, as well as asking Father's mother to have him call her. Father never contacted Mallett regarding arranging phone contact with the children. Prior to the permanent custody hearing, Father contacted Mallett to advise him he was in town, but he did not request a visit with the children.

{¶ 11} Father's mother requested a home study. At the time of the hearing, the study had not been completed. Mallet expressed her understanding the home study

would be denied due to the fact Father had a criminal history and he was residing with his mother.  Mallett also had been contacted by Father's step-sister, who requested a home study.  That home study had not been completed at the time of the hearing.

{¶ 12} Mallet testified the children were doing well in their placement, and a grant of permanent custody to GCCS was in their best interest.  Mallet believed permanent custody was the best outcome because of the low likelihood the children could be reunified with Parents in a reasonable time.  Mallet emphasized Parents' lack of follow through during the pendency of the case.  Father lacked initiative to contact the children even though he was advised he could have contact through cards, letters, or gifts.  Mallet was also concerned with Father's refusal of services.  Mallet was concerned with Mother as she had been vague and evasive throughout the case.  Mother provided contradictory information almost every time she spoke with Mallett.

{¶ 13} Father testified he wanted GCCS to use the mental health evaluation he completed in Florida.  Father admitted he took no action to provide the information to GCCS even after his attorney advised him GCCS had been unable to obtain the information.  Father stated he did not find the time to obtain the documents.  Father blamed his lack of contact with the children on the fact he was never provided with or offered a phone number at which to contact them.  Father last spoke with the guardian ad litem in August, 2010.  Father acknowledged he never requested phone contact with the children, explaining he thought it was better to have no contact as opposed to having any type of communication relayed through a social worker.

{¶ 14} The guardian ad litem testified he believed permanent custody was in the best interest of the children.  The guardian had informed both parents he wanted to

speak with them, but he had no contact with either parent except at court hearings. The guardian stated he considered Father's actions and lack of contact as de facto abandonment of the children. The CASA volunteer also recommended permanent custody be granted to GCCS. The CASA volunteer had not had any contact with Father following his move to Florida.

{¶ 15} Via Judgment Entry filed May 25, 2011, the trial court terminated Mother and Father's parental rights, privileges, and responsibilities with respect to the children, the trial court found a grant of permanent custody to GCCS was in the best interest of the children.

{¶ 16} It is from this judgment entry Mother appeals raising the following assignments of error:

{¶ 17} "I. THE TRIAL COURT ERRED IN FINDING THAT THE CHILDREN COULD NOT BE PLACED WITH THE MOTHER IN A REASONABLE AMOUNT OF TIME UNDER O.R.C. § 2151.414(B)(2).

{¶ 18} "II. THE TRIAL COURT ERRED IN FINING THAT PERMANENT CUSTODY WAS IN THE BEST INTERESTS OF THE CHILDREN UNDER O.R.C. § 2151.414(D)."

{¶ 19} Father appeals the same raising as error:

{¶ 20} "I. THE TRIAL COURT ERRED IN FINDING THAT THE CHILDREN COULD NOT BE PLACED WITH THE FATHER IN A REASONABLE AMOUNT OF TIME PURUSANT TO O.R.C. SEC. 2151.414 (B)(2).

{¶ 21} "II. THE TRIAL COURT ERRED IN FINDING THAT PERMANENT CUSTODY WAS IN THE BEST INTERESTS OF THE CHILDREN UNDER O.R.C. SEC. 2151.414 (D).

{¶ 22} "III. THE TRIAL COURT ERRED IN FINDING THAT: 'THERE HAS BEEN NO RELATIVE OR OTHER INTERSESTED PERSON HAS FILED FOR LEGAL CUSTODY OF THE CHILDREN.' "

{¶ 23} This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.1(C).

Mother Appeal I, II (11CA000017)

Father Appeal I, II (11CA000018)

{¶ 24} Parents' first and second assignments of error are identical; therefore, we shall address them together.  In their first assignments of error, Mother and Father each contend the trial court erred in finding the children could not be placed with her/him within a reasonable time.  In their second assignments of error, Mother and Father each maintain the trial court erred in finding an award of permanent custody was in the best interest of the children.

{¶ 25} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578.

{¶ 26} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶ 27} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶ 28} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the

child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶ 29} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶ 30} If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶ 31} As set forth in our statements of the facts and case, supra, Mother had been almost completely noncompliant with her case plan. At the time of the hearing, she had no means of financial support and no housing for the children. Although one of Mother's case plan requirements was to find stable housing, Mother had actually lost her home as well as her only means of financial support for the children. Mother was robotic in her interaction with the children. All of Mother's visits were supervised.

{¶ 32} Father was also almost completely noncompliant in his case plan. Father failed to provide GCCS with the results of his mental health evaluation. Father had a

total of twelve visits with the children, and only cancelled one, however he had not had any contact with the children for eight months prior to the hearing.

{¶ 33} Based upon the foregoing and the entire record in this matter, we find the trial court's finding the children could not or should not be placed with parents within a reasonable time is not against the manifest weight of the evidence.

{¶ 34} With regards to the best interest, the record reveals the children were together in foster care. The foster mother testified the children had adjusted well to her home and the behaviors of the two older children had improved over time. The foster mother also testified about the action she had taken to resolve the children's behavioral problems, as well as the treatment she had sought for L.D.'s mental health. The foster parents are willing to provide care for the children as long as necessary. Both the guardian ad litem and the CASA volunteer recommended permanent custody be awarded to GCCS. The guardian ad litem indicated the children had expressed their wishes permanent custody be granted.

{¶ 35} Based upon the foregoing, as well as the entire record in this matter, we find the trial court's finding it with the children's best interest to grant permanent custody to GCCS was not against the manifest weight of the evidence. Parents' first and second assignments of error are overruled.

Father Appeal III (11CA000018)

{¶ 36} In his third assignment of error, Father asserts the trial court erred in finding no relative or other interested person had filed for legal custody of the children. Father submits, "The Court might have been technically correct, but in point of fact both the Paternal Grandmother and Paternal Aunt had notified GCCSB that they wanted to

be considered for custody of these children and that there had been a home study completed by the appropriate Florida agency, although it was not, at the time of the permanent custody hearing, in the hands of GCCSB." Brief of Appellant Scott Danforth.

{¶ 37} In *In re Schaefer,* 111 Ohio St.3d 498, 857 N.E.2d 532, 2006-Ohio-5513, the Ohio Supreme Court clearly found a trial court's statutory duty in determining whether it is in the best interest of a child to grant permanent custody to an agency does not include finding, by clear and convincing evidence, no suitable relative is available for placement. The statute requires the trial court to weigh all relevant factors. R.C. 2151.414 requires the court to find the best option for the child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through (d). The statute does not make the availability of a placement which would not require a termination of parental rights an all-controlling factor nor does it require the court to weigh that factor more heavily than other factors. *Schaeffer* at ¶ 64.

{¶ 38} The evidence presented revealed the home study of the paternal grandmother most likely would not have been approved due to Father's criminal history and the fact Father was residing with paternal grandmother. Although Father's stepsister had recently requested a home study, she had not filed a motion for legal custody as of the date of the hearing. At the time of the hearing, no home study on a relative had been submitted and/or approved.

{¶ 39} Based upon the foregoing, Father's third assignment of error is overruled.

{¶ 40} The judgment of the Guernsey County Court of Common Pleas, Juvenile Division, is affirmed.

By: Hoffman, J.

Gwin, P.J.  and

Edwards, J. concur

s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


s/ W. Scott Gwin_____
HON. W. SCOTT GWIN


s/ Julie A. Edwards_____
HON. JULIE A. EDWARDS

IN THE COURT OF APPEALS FOR GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN THE MATTER OF: | : |
| | : |
| L.D., A.D. AND T.C. | : |
| | : |
| DEPENDENT CHILDREN | : |
| | : |
| | : |
| | : |
| | :       JUDGMENT ENTRY |
| | : |
| | : |
| | :       Case Nos. 11CA000017 |

      For the reasons stated in our accompanying Opinion, the judgment of the Guernsey County Court of Common Pleas, Juvenile Division, is affirmed.  Costs to Appellants.


s/ William B. Hoffman _____
HON. WILLIAM B. HOFFMAN


s/ W. Scott Gwin_____
HON. W. SCOTT GWIN


s/ Julie A. Edwards_____
HON. JULIE A. EDWARDS

IN THE COURT OF APPEALS FOR GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:                      :
                                       :
L.D., A.D. AND T.C.                    :
                                       :
DEPENDENT CHILDREN                     :
                                       :
                                       :
                                       :      JUDGMENT ENTRY
                                       :
                                       :
                                       :      Case Nos. 11CA000018


        For the reasons stated in our accompanying Opinion, the judgment of the

Guernsey County Court of Common Pleas, Juvenile Division, is affirmed.    Costs to

Appellants.


                                        s/ William B. Hoffman_____
                                        HON. WILLIAM B. HOFFMAN


                                        s/ W. Scott Gwin _____
                                        HON. W. SCOTT GWIN


                                        s/ Julie A. Edwards_____
                                        HON. JULIE A. EDWARDS