[Cite as *In re S.A.*, 2011-Ohio-2508.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:

S.A., J.R., AND B.R.

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. John W. Wise, J.
Hon. Julie A. Edwards, J.

Case No. 2011AP010003

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Tuscawaras County Court of Common Pleas, Juvenile Division, Case No. JN-09-00324 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | May 20, 2011 |
| APPEARANCES: | |

| | |
|---|---|
| For Appellee - TCJFS | For Appellants |
| DAVID HAVERFIELD<br>389 E. 16th Street, SW<br>New Philadelphia, Ohio 44663 | TYRESHA BROWN-O'NEAL<br>323 West Lakeside Avenue<br>420 Lakeside Place<br>Cleveland, Ohio 44113 |

Guardian Ad Litem for Children

KAREN DUMMERMUTH
349 East High Avenue
P.O. Box 494
New Philadelphia, Ohio 44663

*Hoffman, P.J.*

{¶1}  Appellants Brandy Smith and Joseph Reese, Sr. ("Mother", "Father", respectively; "Parents", collectively) appeal the December 14, 2010 Judgment Entry entered  by the Tuscarawas County Court of Common Pleas, Juvenile Division, which terminated their parental rights with respect to their three minor children, and granted permanent custody of the children to Appellee Tuscarawas County Job and Family Services ("TCJFS").

STATEMENT OF THE FACTS AND CASE

{¶2}  Mother is the biological mother of S.A. (DOB 10/2/05), J.R. (DOB 3/11/08), and B.R. (DOB 4/29/09).  Tommy Adams is the father of S.A.[1]  Father is the biological father of J.R. and the legal father of B.R.  The biological father of B.R. is unknown. Shortly after the birth of B.R., Mother voluntarily placed the infant into the temporary custody of TCJFS.  Mother's stated reason for the voluntary placement was her inability to care for the newborn.  Subsequently, Mother revealed she was in fear of Father and his reaction when he learned he was not B.R.'s biological father.  TCJFS offered to assist Mother in moving to a domestic violence shelter with all three of the children. After Mother refused, S.A. and J.R. were placed in the temporary custody of the TCJFS.

{¶3}  Thereafter, TCJFS filed a Complaint alleging the children to be neglected and dependent.  Initially, Father did not appear or participate in the proceedings.  At the time, domestic violence charges were pending against Father in the New Philadelphia Municipal Court, which limited the contact between Father and Mother.  Parents reunited after the protection order was lifted in January, 2010.  Parents participated in

---

[1] Adams is not a party to this appeal.

and substantially completed all portions of their court-ordered case plan. The court gradually increased visitation, moving to unsupervised and overnight visits. The children were returned to Parents on June 11, 2010.

{¶4} Parents had moved to a residence in Cleveland, Ohio, shortly before the children's return. TCJFS approved the residence, and maintained an order of protective supervision to monitor the placement. A TCJFS case manager visited the home on July 13, 2010, and found nothing out of the ordinary. On or about July 19, 2010, TCFJS received information B.R. had been admitted to Metro Health Medical Center in Cleveland. Parents' explanation the child had fallen down a set of stairs was inconsistent with his injuries. TCJFS obtained emergency custody of all three children on July 20, 2010. The children were placed together in a foster home. Neither Mother nor Father had contact with the children following the second removal. Parents did, however, regularly speak with case workers to check on the children. TCJFS filed a motion for permanent custody on August 17, 2010. The agency received a request to evaluate Lisa Pearl, the children's maternal grandmother, for placement. Mother had previously informed case workers Pearl had a significant history of drug and criminal activity and was not an appropriate placement for the children. After TCJFS filed its motion for permanent custody, Mother claimed she had fabricated the information about Pearl because she did not want TCJFS to pursue placement with her mother. Placement with Pearl was not recommended following the home study.

{¶5} The trial court conducted a hearing on TCJFS's motion for permanent custody on December 2, 2011.

**{¶6}** At the hearing, Elizabeth Benedetto testified she has been the ongoing case manager for the family since September 24, 2009. Benedetto explained Mother contacted TCJFS indicating she did not have the services or the supplies she needed to care for her newborn son, B.R. During the conversation, Mother revealed she was concerned for the child's safety as Father was not the baby's biological father. Mother also advised TCJFS Father was domestically violent. Mother had tested positively for marijuana when she gave birth to B.R.

**{¶7}** Mother's case plan required she maintain safe and stable housing, establish a source of income in order to meet the basic needs of the children, participate in a parent education program, complete a substance abuse assessment and follow any recommendations, complete a psychological evaluation and participate in a domestic violence awareness group. Based upon the psychological evaluation, individual and marriage counseling were added to the case plan. Father's case plan required him to maintain safe and stable housing, establish a means of income for the basic needs of the children, attend a parent education group, complete a substance abuse assessment, a psychological evaluation, and an anger assessment. Based upon the psychological evaluation, individual and marriage counseling was added to Father's case plan. Benedetto stated Parents had substantially completed the case plan.

**{¶8}** Initially, Parents had supervised visitation with the children. Mother and Father had separate visits due to the municipal court order arising out of the domestic violence charge against Father. Mother began supervised visitation in her home in December, 2009. In February, 2010, Parents began having supervised visits together in their home. In May, 2010, Parents were given unsupervised visitation of twelve

hours/week. The trial court approved overnight visitations. The children were returned to Parents' custody on June 11, 2010.

{¶9} Benedetto visited Parents and the children on July 13, 2010. Benedetto found everything to be "going okay" in the home. However, on July 19, 2010, she received a phone call advising her B.R. had been taken to the Cleveland Metro Hospital on July 18, 2010. B.R.'s injuries included trauma to his brain, trauma to his eyes, a significant injury to his baby toe, and an injury to the inside of his upper lip. Mother contacted Benedetto and explained B.R. had fallen down the stairs and his injuries were results of that incident. Medical personnel at Metro Health Medical Center determined a fall was not the cause of the injuries to B.R. Mother explained B.R.'s toe injury was possibly from a bug bite and the child "was digging at it". Mother believed B.R.'s toe injury worsened as a result of the treatment at the hospital. TCJFS's protective unit investigated the former foster parents and concluded B.R.'s injuries did not occur prior to his return to Parents. As a result, all three children were placed in the temporary custody of TCJFS. The trial court issued a no contact order on July 21, 2010, which had not been modified as of the date of the permanent custody hearing.

{¶10} Benedetto stated the three children are placed together in the same foster home. The children are doing very well in foster care. Benedetto noted S.A. has some behavioral issues, and the child can become physically and verbally violent. TCJFS is working on those issues and Benedetto had seen a positive change in the boy since being placed into foster care. The three boys interact well together and the foster parents have not reported any aggression by S.A. toward his siblings. The foster parents are interested in adopting the children.

**{¶11}** Benedetto was given the names of Lisa Pearl, Mother's mother, and Suzanne Reese, Father's mother, as potential relative placement for the children. Benedetto spoke with Suzanne Reese and advised her she and any other adults in her home would need to be fingerprinted prior to the home study. Because Reese did not have any identification, she could not be fingerprinted. Reese did not make any further attempt to contact Benedetto about a home study.

**{¶12}** Benedetto met with Lisa Pearl on two occasions. Pearl had visitation with the children on October 29, 2010, which was the first time in two years she had seen the boys. The results of Pearl's fingerprinting revealed multiple prostitution charges with confinement, several charges of grand larceny/stolen property which were ultimately dismissed, and a burglary charge. Pearl submitted to a drug screen and tested positive for opiates. Benedetto noted TCJFS was not recommending placement of any or all of the children with Pearl based upon a number of concerns. Up until the time TCJFS filed for permanent custody, Mother and Father expressed their belief Pearl was not an individual who should be around the children. TCJFS received information Pearl used crack cocaine, abused prescription drugs, and had abused other grandchildren. Throughout much of the case, Mother expressed her opinion the children should not be with Pearl. However, in September, 2010, Mother contacted Benedetto and told the case worker she had lied about everything she had said about her mother.

**{¶13}** Benedetto acknowledged Parents had substantially complied with their case plan, but such should not dictate whether they receive custody of the children as concerns for the children's safety still existed. Benedetto recommended the trial court grant permanent custody to TCJFS.

{¶14} Via Judgment Entry filed December 14, 2010, the trial court terminated all of Parents' parental rights, and granted permanent custody of the children to TCJFS. It is from this judgment entry Parents appeal, raising the following assignments of error:

{¶15} "I. THE JUVENILE COURT ERRED IN TERMINATING THE MOTHER'S PARENTAL RIGHTS WITH RESPECT TO S.A.

{¶16} "II. THE JUVENILE COURT ERRED IN TERMINATING THE MOTHER AND FATHER'S PARENTAL RIGHTS WITH RESPECT TO J.R., JR.

{¶17} "III. THE JUVENILE COURT ERRED IN TERMINATING THE MOTHER AND FATHER'S PARENTAL RIGHTS WITH RESPECT TO B.R.

{¶18} "IV. THE JUVENILE COURT ERRED IN FINDING THAT THERE WAS NO SUITABLE FAMILY PLACEMENT FOR THE CHILDREN."

{¶19} This case comes to us on the accelerated calendar governed by App.R. 11.1, which states the following in pertinent part:

{¶20} "(E) Determination and judgment on appeal

{¶21} "The appeal will be determined as provided by App. R. 11.1. It shall be sufficient compliance with App. R. 12(A) for the statement of the reason for the court's decision as to each error to be in brief and conclusionary form.

{¶22} The decision may be by judgment entry in which case it will not be published in any form."

I, II, III

{¶23} Because the first three assignments of error require similar analysis, we shall address said assignments of error together. In the first assignment of error, Mother contends the trial court erred in terminating her parental rights with respect to

S.A.  In the second assignment of error, Parents challenge the trial court's termination of their parental rights with respect to J.R.  In the third assignment of error, Parents challenge the trial court's termination of their parental rights with respect to B.R.

{¶24} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v.. Jeffries* (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578.

{¶25} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶26} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody

of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶27} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶28} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶29} If the child is not abandoned or orphaned, then the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that

one or more of the factors enumerated in R .C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶30} In the instant action, the trial court found the children could not or should not be placed with Parents within a reasonable time. We find this determination is not against the manifest weight of the evidence.

{¶31} Shortly after B.R.'s birth, Mother voluntarily placed the newborn in the temporary custody of TCJFS. Mother advised TCJFS workers she could not properly care for the baby. Mother subsequently revealed she feared for the safety of B.R. because Father was not the baby's biological father. S.A. and J.R. were removed from Parents' home after Father was charged with domestic violence against Mother and Mother refused to take herself and the children to a domestic violence shelter.

{¶32} Mother and Father substantially completed their case plans, and all three children were returned to their care. Within five weeks of their return, Mother presented B.R. at the emergency room. Mother advised medical personnel B.R.'s injuries were the result of a fall down a flight of stairs. Medical personnel determined the injuries were inconsistent with a fall. Medical personnel also expressed concern over the fact Parents did not seek treatment sooner for some of B.R.'s other injuries. Mother blamed the severity of the child's toe injury on the treatment he received at the hospital. An investigation by TCJFS revealed B.R.'s older, healing injuries could not have been caused prior to the children's return to Parents' home. At the hearing, Mother stated the injuries also could have been caused by S.A. However, Mother never raised concerns with the case worker about S.A.'s aggressive behavior despite the fact the boy

displayed violent behavior before his initial removal from Parents' care and throughout his time in TCJFS custody. Parents failed to keep their children safe.

**{¶33}** With regard to the best interest finding, the record reveals the three brothers are together in a foster home and are doing well. The foster family is willing to adopt them.

**{¶34}** Based upon the foregoing, we find the trial court did not err in terminating Parents' parental rights with respect to all three children.

**{¶35}** Parents' first, second, and third assignments of error are overruled.

IV

**{¶36}** In their final assignment of error, Parents assert the trial court erred in finding there was no appropriate family placement for the children.

**{¶37}** In *In re Schaefer,* 111 Ohio St.3d 498, 857 N.E.2d 532, 2006-Ohio-5513, the Ohio Supreme Court clearly found a trial court's statutory duty in determining whether it is in the best interest of a child to grant permanent custody to an agency does not include finding, by clear and convincing evidence, no suitable relative is available for placement. The statute requires the trial court to weigh all relevant factors. R.C. 2151.414 requires the court to find the best option for the child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through (d). The statute does not make the availability of a placement which would not require a termination of parental rights an all-controlling factor nor require the court to weigh that factor more heavily than other factors. *Schaeffer* at ¶ 64.

**{¶38}** Parents argue because Mother testified at the hearing she previously had lied about Lisa Pearl, her mother and the children's grandmother, the trial court's finding

no appropriate placement existed is against the manifest weight of the evidence. We disagree. TCJFS presented evidence which supported Mother's alleged lies. TCJFS conducted a home study of Pearl. As part of the home study, Peal submitted to a drug screen. The screen was positive for morphine and hydromorphone. Pearl has past convictions for prostitution and arrests related to property crimes. Further, Pearl has had involvement with a number of children's service agencies.

{¶39} Based upon the foregoing, the trial court did not err or abuse its discretion in finding Pearl was not an appropriate placement for the children.

{¶40} Parents' fourth assignment of error is overruled.

By: Hoffman, P.J.

Wise, J.  and

Edwards, J. concur

s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


s/ John W. Wise_____
HON. JOHN W. WISE


s/ Julie A. Edwards_____
HON. JULIE A. EDWARDS

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:                      :
                                       :
S.A., J.R., AND B.R.                   :
                                       :
                                       :          JUDGMENT ENTRY
                                       :
                                       :
                                       :          Case No. 2011AP010003


  For the reasons stated in our accompanying Opinion, the judgment of the Tuscawaras County Court of Common Pleas, Juvenile Division, is affirmed.  Costs to Appellants.


s/ William B. Hoffman _____
HON. WILLIAM B. HOFFMAN


s/ John W. Wise_____
HON. JOHN W. WISE


s/ Julie A. Edwards_____
HON. JULIE A. EDWARDS