IN RE SCHAEFER.

[Cite as *In re Schaefer,* 111 Ohio St.3d 498, 2006-Ohio-5513.]

(No. 2005–0755—Submitted November 9, 2005—Decided October 25, 2006.)

PFEIFER, J.

## Factual and Procedural Background

{¶ 1} Damian Xavier Schaefer ("Damian") was born on July 5, 2003. Ten days later, Geauga County Job and Family Services ("GCJFS") filed a complaint in Geauga County Juvenile Court alleging that Damian was abused and dependent. Damian had been born premature and tested positive for cocaine; GCJFS alleged that his mother, appellee Amy Schaefer, used cocaine while pregnant with Damian.

{¶ 2} There is no dispute that at the initial hearing on July 24, 2003, Schaefer and Doug Morris, Damian's father, entered pleas of "true" to GCJFS's amended complaint, admitting that Damian was abused pursuant to R.C. 2151.031(D) and dependent pursuant to R.C. 2151.04(B) and (C). On August 1, 2003, the court placed Damian in the temporary custody of GCJFS, which placed him with a foster family.

{¶ 3} On August 25, 2003, the court adopted a case plan for both parents, requiring both to obtain and maintain stable employment, attend parenting classes, complete mental-health and drug and alcohol assessments, and follow the recommendations of the counselors. The court additionally ordered that both parents participate in individual counseling at least twice per month and joint counseling as recommended. The court determined that Damian should remain in the temporary custody of GCJFS; according to the case plan, each parent was allowed one supervised two-to-five hour visit with Damian per week. The case plan noted that none of the relatives named by the parents were available for the possible placement of Damian.

{¶ 4} The court conducted a review hearing on December 1, 2003. In its December 3, 2003 entry, the court concluded that "the child's parents have failed to achieve the goals in the case plan and that the child would be placed at risk if placed in the home of either parent." Specifically, the court found that "neither parent currently has a stable home; neither parent has completed mental health assessments or drug and alcohol assessments as required by the case plan; the child's mother has tested positive for the use of cocaine and the child's father has refused to submit to random drug testing; there has been an incident of domestic violence between the parents this review period; neither parent has completed parenting classes that have been reasonably available to them; neither parent has met on a regular basis with the case worker; and the child's father has not visited with the child on a regular basis."

{¶ 5} Another review hearing was held on March 12, 2004. In its March 15, 2004 entry, the court again determined that Damian should remain in the temporary custody of GCJFS, finding that "neither parent has made much progress in achieving the goals of the case plan." The court's findings included the following:

{¶ 6} "Neither parent was able to produce proof that they have maintained stable employment during this review period. * * * Neither parent has addressed in counseling past problems with their relationship which include incidences [sic] of domestic violence. Neither parent has participated in counseling on a regular basis during this review period. In the weeks immediately prior to the Review Hearing, Amy Schaefer's attendance has become more regular. Doug Morris has not been attending counseling * * * now that he resides out of the county. It does not appear that he has made any effort to initiate counseling in the county where he resides that might be available to him at reduced cost.

{¶ 7} "Both parents have tested positive for cocaine use [during] this review period. Neither parent is actively involved in substance abuse treatment at this time."

{¶ 8} The court held another review hearing on July 19, 2004. In its July 26, 2004 entry, the court found that "neither parent has made significant progress in achieving any goals in the case plan" and ordered that Damian remain in the temporary custody of GCJFS. Included in the court's findings were the following:

{¶ 9} "The parents have completed age appropriate parenting classes. Visitation between parents and the child has been inconsistent due to parents being late for visitations or missing scheduled visits altogether.

{¶ 10} "Neither parent has been consistent in attending counseling appointments. They have recently begun counseling with a new counselor. Due to the limited amount of time the new counselor has counseled with the parents he is

unable to make recommendations regarding progress in counseling. Mr. Morris has not completed the recommended psychiatric assessment and neither parent is in compliance with following recommendations from Court ordered drug and alcohol assessments.

{¶ 11} "Neither parent acknowledges the issues and problems that caused them to be involved with the Court. They consistently blame others for their failure to meet the goals and objectives of the case plan."

{¶ 12} Further, the court scheduled a permanent-custody hearing for September 15, 2004 in response to GCJFS's July 2, 2004 motion for permanent custody.

{¶ 13} On August 24, 2004, Morris's father, David Morris, and stepmother, Brenda, filed a motion for custody of Damian. With the approval of GCJFS, David and Brenda had been engaged in regular visitation with Damian, about once per month beginning in May 2004. The court dismissed the motion for custody because David and Brenda were not parties to the proceeding. On September 9, however, the court granted David and Brenda's motion to intervene.

{¶ 14} The permanent custody hearing was held on September 15 and 20, 2004. The court heard from numerous witnesses regarding Schaefer's and Morris's progress with regard to the case plan. The court also heard testimony from Damian's guardian ad litem, Janet Rice. She testified that Schaefer had exhibited positive parenting skills during supervised visits and that Damian responded well to her. She also testified, however, that Schaefer had failed to comply with the case plan by failing to get treatment and counseling. Rice testified that Damian had bonded with his foster family and that he was happy, expressive, and thriving under their care. She recommended that the court award permanent custody to GCJFS.

{¶ 15} The foster mother, Katie, testified that she would be willing to adopt Damian if GCJFS were given permanent custody. She testified that she and her husband have what she called a "foster-to-adopt license," through which they agreed that if the child needs to be placed permanently, they will adopt.

{¶ 16} Damian's paternal grandfather, David Morris, also testified at the hearing. He testified that he had not learned of Damian's birth until February 2004. David then requested visitation with Damian; GCJFS denied visitation until it could complete a home study. After the home study, David Morris and his wife were approved for visitation.

{¶ 17} David testified that he began visitation with Damian, but that visitation was minimal due to the distance between his home in West Virginia and Damian in Geauga County. He visited with Damian once a month from May 2004

through September 2004. The most recent two visits had taken place in Marietta so that David would not have to travel as far.

{¶ 18} In its September 30, 2004 judgment, the juvenile court granted permanent custody of Damian to GCJFS. The court wrote:

{¶ 19} "The Court finds that following the placement of the child outside the child's home and not withstanding reasonable case planning and diligent efforts by GCJFS to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parents have failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home."

{¶ 20} The court considered possible placement with David Morris, but concluded that it was in Damian's best interest that permanent custody be granted to GCJFS:

{¶ 21} "The Court finds that prior to the child's placement in foster care, the child's parents were given an opportunity to propose friends or family members to be considered as placement alternatives by GCJFS. The family members that were nominated by the child's mother expressed an unwillingness to serve as a placement option for the minor child. The child's father did not identify any family members to be considered as placement options for the minor child.

{¶ 22} " * * *

{¶ 23} "The Court further finds that the child does have a strong need for a legally secure permanent placement. A legally secure permanent placement could be achieved by a grant of permanent custody to GCJFS so that the child could be placed for adoption with the current foster parents. There is also a possibility that a legally secure placement could be found by placing the child in the legal custody of the child's paternal grandfather and paternal step-grandmother. Such a placement could not legally be disturbed without a subsequent finding that there was a change of circumstances and that it was in the child's best interest that the custody order be modified. However, given the totality of the circumstances, the Court finds that it is in the child's best interest that the permanent custody motion be granted so that the placement of the child in his current foster home can be continued."

{¶ 24} The court concluded:

{¶ 25} "The parental rights and obligations of the child's parents are hereby ordered terminated. It is the order of the Court that the child shall be eligible for adoption without the consent of either parent."

{¶ 26} Schaefer appealed that decision. The appellate court reversed, holding that the court's termination of Schaefer's parental rights was an abuse of discretion. The appellate court's determination was not based upon the trial

court's findings regarding Schaefer, but rather upon the trial court's consideration of the situation with David Morris:

{¶ 27} "First, we acknowledge [that] the juvenile court properly found that appellant failed to substantially comply with the case plan and that appellant failed to remedy the conditions which caused Damian's temporary custody with GCJFS. However, in this case, GCJFS was also required to present clear and convincing evidence that no suitable relative was available for placement. It failed to do so."

{¶ 28} The appellate court held that in determining the best interest of the child, the juvenile court failed to properly consider placement with David Morris. The appellate court found that "extenuating circumstances caused the limited relationship and infrequent visits. * * * David's lack of knowledge with respect to Damian's existence and GCJFS's rapid filing for permanent custody establishes mitigating circumstances for David's delayed and infrequent visitation."

{¶ 29} The court found that GCJFS should have extended temporary custody to more thoroughly explore the less drastic alternative to termination: "Failure to do so resulted in the inability of GCJFS to supply the juvenile court with clear and convincing evidence that David was not a suitable placement option." The court found that "[i]t was GCJFS's burden to prove, by clear and convincing [evidence], that termination of appellant's parental rights was not only a necessary option, but also the only option." The appellate court ordered GCJFS "to amend the case plan to set forth a visitation schedule which will allow a proper evaluation of David as a possible permanent placement option. Temporary custody is to remain in effect pending further proceedings consistent with our opinion."

{¶ 30} The cause is before this court upon the acceptance of a discretionary appeal.

Law and Analysis

{¶ 31} R.C. 2151.414(B)(1) establishes the test for a juvenile court to apply in ruling on a motion by a public children services agency for permanent custody of a child. The statute provides:

{¶ 32} "[T]he court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

{¶ 33} "(a) * * * [T]he child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

{¶ 34} "(b) The child is abandoned.

{¶ 35} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

{¶ 36} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."

{¶ 37} GCJFS based its motion for permanent custody specifically on the element contained in R.C. 2151.414(B)(1)(a). Thus, in order to obtain permanent custody of Damian, GCJFS had to show by clear and convincing evidence that (1) Damian could not or should not be placed with his parents and (2) that it was in Damian's best interest that the agency be granted permanent custody.

{¶ 38} R.C. 2151.414(E) sets forth the elements necessary to satisfy an R.C. 2151.414(B)(1)(a) determination that the child cannot or should not be placed with his parents within a reasonable time:

{¶ 39} "In determining * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

{¶ 40} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶ 41} "* * *

{¶ 42} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

{¶ 43} "* * *

{¶ 44} "(16) Any other factor the court considers relevant."

{¶ 45} The trial court made findings touching specifically on R.C. 2151.414(E)(1) and (4). As for R.C. 2151.414(E)(1), the court found that both parents had failed to follow through with the case plan, "which included goals that the parents become independent and self sufficient; that they demonstrate the ability to provide care for Damian in a safe and consistent environment by completing mental health assessments and following through with the recommendations; and that they demonstrate the ability to provide a drug and alcohol free home environment for Damian by completing drug and alcohol assessments and following through with the recommendations of the assessments."

{¶ 46} As for R.C. 2151.414(E)(4), the court found that neither parent consistently attended visits and that neither parent made any contribution toward their court-ordered child-support obligation.

{¶ 47} The court thus found by clear and convincing evidence that Damian cannot safely be placed with either of his parents within a reasonable time. In making that significant determination, the court satisfied the requirements of R.C. 2151.414(B)(1)(a); that aspect of the juvenile court's decision is not in dispute.

{¶ 48} The juvenile court next had to determine whether granting permanent custody to the agency was in the child's best interest. It is in that aspect of the juvenile court's decision that the appellate court found error.

{¶ 49} R.C. 2151.414(D) sets forth the factors a court must consider in determining the best interests of the child. That section provides:

{¶ 50} "In determining the best interest of a child at a hearing held pursuant to division (A) of this section * * *, the court shall consider all relevant factors, including, but not limited to, the following:

{¶ 51} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

{¶ 52} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

{¶ 53} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;

{¶ 54} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

{¶ 55} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

{¶ 56} A court must conclude by clear and convincing evidence that an assignment of permanent custody is in the best interest of the child. R.C. 2151.414(E). The court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors. There is not one element that is given greater weight than the others pursuant to the statute. The heightened importance that the appellate court assigned to R.C. 2151.414(D)(4) is not required by or even hinted at in the statute, nor is the trial court required to credit evidence in support of maintaining the parental relationship when evidence supporting termination outweighs it clearly and convincingly. The trial court's opinion demonstrates that it considered all the factors required under R.C. 2151.414(D).

{¶ 57} As for the factor in R.C. 2151.414(D)(1) regarding "[t]he interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child," the trial court determined that Damian had developed a strong bond with his foster family:

{¶ 58} "The child has developed a very strong bond and attachment with his foster parents. The foster parents have provided the child with an exceptionally nurturing and supportive home environment. The child's strongest bond appears to be with his stay-at-home foster mother with whom he spends the majority of his time. The foster mother has been attentive to providing for the child's emotional and developmental needs. * * * By all accounts, the child has thrived in the foster home placement. Despite having been born premature and testing positive for cocaine, the child is described as a very happy child that is developmentally on target."

{¶ 59} The court also addressed the inconsistent visitation of Damian's natural parents and his interaction with his paternal grandparents.

{¶ 60} As for the R.C. 2151.414(D)(2) factor of "[t]he wishes of the child," the trial court found that at 14 months of age, the child was too immature to articulate his wishes, but noted that the guardian ad litem had testified that it was in the best interest of the child that permanent custody be granted to GCJFS so that the child could be adopted by his foster family.

{¶ 61} As for the R.C. 2151.414(D)(3) factor of the child's custodial history, the court found that the child had been in the care of the same foster family since shortly after his birth.

{¶ 62} As for the R.C. 2151.414(D)(4) factor of the child's need for permanent placement and the ability to achieve placement without a grant of permanent custody to the agency, the court found that Damian had a strong need for

permanent placement, and that such a placement could be made with David Morris and his wife or with the foster family.

{¶ 63} In considering all the factors and "the totality of the circumstances," the court found that it was in the best interest of the child that "the permanent custody motion be granted so that the placement of the child in his current foster home be continued."

{¶ 64} The court satisfied its statutory duty. That duty did not include the requirement imposed by the appellate court that the juvenile court determine by clear and convincing evidence that "termination of appellant's parental rights was not only a necessary option, but also the only option." Nor did that duty include the requirement that the juvenile court find by clear and convincing evidence that no suitable relative was available for placement. The statute requires a weighing of all the relevant factors, and the trial court did that in this case. R.C. 2151.414 requires the court to find the best option for the child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through (d). The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors.

{¶ 65} The issue of the child's best interest comes at the end of a long road in this case. First, Damian was judged abused and dependent because he had cocaine in his system at birth. None of the relatives named by the parents were willing to take in Damian, and he was placed in a foster home. Then, his parents consistently failed to follow the case plan through which they could regain custody. Finally, after over a year passed, the juvenile court found that Damian could not be placed with his parents within a reasonable time and should not be placed with them. Only after that determination did Damian's best interest, as statutorily defined, come to the forefront. Only then was an eventual reunification not the paramount concern. In determining the best interest of Damian pursuant to R.C. 2151.414, the juvenile court properly considered all of the statutory factors.

{¶ 66} Since the juvenile court properly applied R.C. 2151.414, we reverse the judgment of the appellate court and reinstate the judgment of the trial court.

Judgment reversed.

MOYER, C.J., RESNICK, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

---

David P. Joyce, Geauga County Prosecuting Attorney, and Brian M. Richter, Assistant Prosecuting Attorney, for appellant Geauga County Job and Family Services.

Pamela Walker Makowski, for appellee Amy Schaefer.

McNamara, Hanrahan, Callender & Loxerman and Amy Marie Freeman, for appellee Damian Xavier Schaefer.

Jones Day and Brian G. Selden, urging reversal for amici curiae Eric and Katherine M.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, urging reversal for amicus curiae Cuyahoga County Department of Children and Family Services.