[Cite as *In re A.J.*, 2017-Ohio-1392.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re A.J.

Court of Appeals No. L-16-1258

Trial Court No. JC 15250835

### DECISION AND JUDGMENT

Decided: April 14, 2017

* * * * *

James J. Popil, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Appellant, H.J., appeals the October 28, 2016 judgment of the Lucas County Court of Common Pleas, Juvenile Division, that terminated her parental rights and granted permanent custody of her daughter, A.J. ("the child"), to appellee, Lucas County Children Services ("LCCS"). Though the child does not have a legally-identified father,

the trial court also terminated the parental rights of father, "John Doe," who is not a party to this appeal.  For the following reasons, we affirm.

## I.  Background

{¶ 2} Appellant gave birth to the child in September of 2015 while incarcerated on charges of robbery.  Appellant initially arranged for her paternal grandmother to care for the child, but a week later, she decided to place the child with J.J., her uncle's former girlfriend.  Shortly thereafter, J.J. received threats from appellant's relatives and decided that she could not care for the child.

{¶ 3} On October 15, 2015, J.J. relinquished custody and LCCS filed a complaint in dependency and requested temporary custody of the child.  A shelter care hearing was held the same day.  At the hearing, Lori Luce, an LCCS investigative caseworker, testified that appellant was incarcerated at the Dayton Correctional Institution on a robbery conviction and was not scheduled to be released until October 22, 2018.  Luce explained that LCCS did not offer appellant any case plan services due to her incarceration.  Luce testified that appellant identified two potential fathers of the child: appellant's stepfather, C.M., and another man, R.S.  C.M. denied being the child's father and, in any event, did not appear to be a suitable caregiver given that he had allegedly threatened one of the child's former caregivers.  R.S. was incarcerated at the time of the hearing and, therefore, was unavailable to care for the child.  Luce suggested R.S.'s sister as a potential relative placement option assuming that R.S. was, in fact, the father.  At the

2.

conclusion of the shelter care hearing, the trial court awarded LCCS temporary custody of the child and appointed Joan Crosser as the child's guardian ad litem ("GAL").

{¶ 4} On January 7, 2016, the trial court held adjudicatory and dispositional hearings to determine whether the child was dependent and, if so, where to place her. Luce testified again during the adjudicatory phase. She explained that although appellant had initially placed the child with two different caregivers—first, her grandmother and shortly thereafter, J.J—she never awarded legal custody of the child to either of them; rather, appellant provided each former caregiver a paper she signed at the prison purportedly granting the holder guardianship of the child. Luce also clarified that J.J. was an ex-girlfriend of appellant's uncle and did not have stable housing or sufficient income to meet the child's needs during the short time that she had physical custody of the child. Regarding potential father C.M., Luce testified that she spoke to him twice on the phone. C.M. refused paternity testing, but expressed interested in having custody of the child so long as LCCS was not involved. Based on Luce's testimony, the court found by clear and convincing evidence that the child was a dependent child.

{¶ 5} The court then proceeded to the dispositional phase. LCCS presented the testimony of Lareiva Cooper, an ongoing caseworker. Cooper testified that the child's case plan goal was reunification, but neither appellant nor potential father R.S. were receiving case plan services because both were incarcerated. She noted that appellant intended to apply for early release from prison, but Cooper did not know when or if appellant was eligible to do so. Cooper testified that LCCS investigated several potential

3.

relative placement options, but none was suitable. Two of the potential placements were R.S.'s relatives, but the agency could not place the child with them because it was unsure if R.S. was the child's father. Appellant's uncle was investigated as an option, but LCCS could not place the child with him because of his criminal record. The final option was appellant's cousin, but it appeared that the cousin lacked interest in caring for the child because she had stopped contacting the agency. Cooper reported that the child was in foster care and doing well. She was healthy, happy, and developmentally on target.

{¶ 6} The GAL presented her recommendation to the court. She recommended that temporary custody be awarded to LCCS because the child's foster care placement was appropriate, her needs were being met, and temporary custody was in the child's best interest. The court found by clear and convincing evidence that awarding temporary custody to LCCS was in the child's best interest, and it granted LCCS temporary custody of the child. On February 9, 2016, the court filed a judgment entry memorializing its dependency and temporary custody decisions.

{¶ 7} On April 13, 2016, the trial court held a reasonable efforts hearing to determine whether LCCS had been making and was continuing to make reasonable efforts to prevent continued removal of the child from her home. LCCS presented the testimony of Shawn Myers, an ongoing caseworker. Myers testified LCCS had determined that R.S. was not the child's father, but that LCCS was investigating a third potential father, A.D.J. He stated that LCCS's case plan for the child had included a Help Me Grow assessment, which had been completed and resulted in no recommendations.

4.

He said that appellant was not receiving case plan services because of her incarceration. The GAL also testified. She told the court that LCCS was making reasonable efforts toward reunification and that the child was doing very well in her placement. Based on the testimony, the court approved the case plan and found that LCCS had been making and was continuing to make reasonable efforts to prevent continued removal of the child from her home.

{¶ 8} On July 8, 2016, LCCS filed a motion for permanent custody. The permanent custody hearing was held on October 17 and 18, 2016. Appellant's attorney requested a continuance on the first day of the hearing to explore three more potential custodians and to give her more time to discuss LCCS's allegations with appellant. LCCS and the GAL both opposed the motion because the case had been pending for a year and further delaying a permanent custody determination was not in the child's best interest. The court agreed with LCCS's and the GAL's arguments and denied the motion.

{¶ 9} Cooper again testified at the permanent custody hearing. She stated that she had been the child's caseworker for ten months. She reiterated that appellant was still unable to care for the child because she was in prison and was not receiving case plan services because of her incarceration. She also testified that all three potential fathers had been excluded as the child's biological father. Cooper discussed all of the various potential placements that LCCS investigated for the child. The first was J.J., who had custody of the child before LCCS took custody. Unfortunately, J.J. did not have stable housing or income sufficient to meet the child's basic needs. In addition, J.J. had been

5.

threatened by appellant's mother several times. Although J.J. expressed an interest in the child, she never filed a motion for custody.

{¶ 10} Cooper further testified that LCCS had investigated two relative placement options, but neither was suitable. One relative completed a background check, but then decided she could not take the child until she was living in her own home. The other relative had an extensive criminal history that eliminated him from consideration. Cooper stated that she was unable to speak with appellant about additional potential relative placements because appellant had been in the segregation unit at the prison during the two months prior to the permanent custody hearing.

{¶ 11} On cross-examination by appellant's attorney, Cooper stated that she did not consider C.M. for a relative placement because he initially refused paternity testing and the agency could not consider him without establishing paternity. The record reflects that C.M. had filed a motion for custody of the child, but the trial court dismissed the motion after C.M. consented to paternity testing and was genetically excluded as the child's father. Cooper also spoke with J.T., a friend of the family who was formerly a licensed foster parent, but J.T. was not willing to take the child at that time.

{¶ 12} Regarding appellant's incarceration, Cooper testified that appellant was in prison for robbery and would not be released until 2018. She also stated that appellant applied for early release in July 2016, which was denied. LCCS admitted a certified copy of the docket from appellant's 2015 criminal case that showed appellant was convicted of one count of robbery and was sentenced to two years in prison. LCCS also admitted a

certified copy of the docket from a 2012 criminal case that showed appellant was convicted of burglary and ultimately spent 30 months in prison for that separate conviction.

{¶ 13} Appellant testified on her own behalf at the permanent custody hearing. She confirmed that she was residing at the Dayton Correctional Institution and her release date was October 22, 2018. She claimed that she intended to file for judicial release in March 2017. She had not seen the child since she was three days old. Appellant testified that she wanted the child to be placed with a family member so she could maintain contact with the child. She explained that she initially arranged to place the child with her grandmother, but her grandmother became ill and could not care for the child. She then placed the child with J.J., who she identified as her uncle's girlfriend. She claimed that J.J. was willing to take the child but needed to secure housing first, and that J.J. took the child to LCCS because appellant's mother was threatening her. Appellant suggested that LCCS consider C.M., her stepfather, for a relative placement.

{¶ 14} On cross-examination, appellant acknowledged that J.J. was no longer living with or dating her uncle. She also admitted that she was incarcerated on a second robbery charge, which the court ordered to be served consecutively to her other robbery charge, so she was not eligible to apply for judicial release until March 2017. Appellant clarified that C.M. is her mother's ex-husband. She claimed that she never identified C.M. as a potential father and told the agency he was not the father. She testified that she

7.

had not spoken to Cooper in several months because she had been in the prison's isolation unit since July 2016.

{¶ 15} Appellant also called J.J. to testify. J.J. stated that although she is not biologically related to the child, she considers herself the child's great-aunt. She believed that LCCS took custody of the child due to text messages from appellant's mother even though J.J. did not consider the messages threatening or have any concerns for her safety. But on cross-examination, J.J. admitted that appellant's mother sent her a picture of people digging a grave and that C.M. told appellant's uncle (J.J.'s former boyfriend) that he would kill the uncle if the uncle did not give C.M. the child.

{¶ 16} Regarding her housing situation, J.J. testified that she lived with her daughter to help care for her grandchild approximately half of the time and lived with her mother the other half. J.J. stated that she was willing to find a separate two-bedroom home so that she could have custody of the child. As to her income, J.J. indicated that she received disability payments, worked part-time at a fast-food restaurant, and did seasonal tax preparation. She also claimed that she worked with LCCS to become a licensed foster care worker specifically so she could have custody of the child. She admitted, however, that she had not filed a motion for custody.

{¶ 17} Finally, LCCS called the GAL. The GAL testified that she investigated the child's situation and believed that an award of permanent custody to LCCS is in the child's best interest. She testified that the child is healthy and developmentally on target and her foster parents meet all of her needs. The GAL indicated that permanent custody

8.

is in the child's best interest because the child needs a secure placement, which may best be achieved by awarding LCCS permanent custody. In support of her recommendation, the GAL testified that the child could not be reunited with her mother in a reasonable period of time because appellant was scheduled to be in prison for two more years; there were no appropriate maternal relatives with whom to place the child; and no paternal relatives could be considered given that the child's father was unknown. The GAL stated that she would have no issue with the child being placed with J.J. if J.J. filed a motion for custody or a petition for adoption.

{¶ 18} On October 18, 2016, the court awarded permanent custody of the child to LCCS. In its October 28, 2016 judgment entry, the court found by clear and convincing evidence under R.C. 2151.414(B)(1)(a) that the child could not be placed with either parent in a reasonable time and should not be placed with either parent. The court found under R.C. 2151.414(E)(12) that appellant was incarcerated at the time of the filing of the motion for permanent custody or dispositional hearing and would not be available to care for the child for at least 18 months after the filing of the motion for permanent custody or the dispositional hearing, and under R.C. 2151.414(E)(10) that the father had legally abandoned the child. The court also found by clear and convincing evidence under R.C. 2151.414(D)(1) that it was in the child's best interest to award LCCS permanent custody, and placing the child with either parent would be contrary to the child's best interest. The court determined that LCCS made reasonable efforts to implement and finalize a permanent placement plan by offering case plan services and attempting to find an

9.

alternate placement for the child and in identifying an alternative permanent placement plan when case services failed. LCCS also made reasonable efforts to find a potential relative placement, but it was unable to identify any suitable relatives. The court terminated appellant's parental rights to the child. Appellant appeals the trial court's decision.

{¶ 19} Appellant's appointed counsel filed a request to withdraw pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). In support of his request to withdraw, counsel states that, after reviewing the record of proceedings in the trial court, he was unable to find any appealable issues. Counsel asserted that after thoroughly reviewing the transcript of proceedings from the trial court as well as the applicable case law, no meritorious assignments of error could be presented. Counsel did, however, submit two potential assignments of error:

 I. THE TRIAL COURT ERRED IN GRANTING APPELLEE LUCAS COUNTY CHILDREN SERVICES PERMANENT CUSTODY AS THE DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

 II. THE TRIAL COURT ERRED IN GRANTING APPELLEE LUCAS COUNTY CHILDREN SERVICES PERMANENT CUSTODY AS THERE WAS A SUITABLE RELATIVE AVAILABLE TO BE AWARDED LEGAL CUSTODY.

{¶ 20} The procedure to be followed by appointed counsel who desires to withdraw for want of a meritorious, appealable issue is set forth in *Anders*. In *Anders*, the Supreme Court of the United States found if counsel, after a conscientious examination of the case, determines it to be wholly frivolous, he should so advise the court and request permission to withdraw. *Anders* at 744. This request must be accompanied by a brief identifying anything in the record that could arguably support the appeal. *Id.* In addition, counsel must furnish the client with a copy of the brief, request to withdraw, and allow the client sufficient time to raise any matters she chooses. *Id.* Once these requirements have been satisfied, the appellate court must conduct a full examination of the proceedings held below to decide if the appeal is indeed frivolous. *Id.* If the appellate court determines the appeal is frivolous, it may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements, or it may proceed to a decision on the merits if required by state law. *Id.* The procedures in *Anders* apply to appeals involving the termination of parental rights. *In re B.H.*, 6th Dist. Lucas No. L-15-1166, 2015-Ohio-5495, ¶ 5, citing *Morris v. Lucas Cty. Children Servs. Bd.*, 49 Ohio App.3d 86, 550 N.E.2d 980 (6th Dist.1989), syllabus.

{¶ 21} Here, appellant's counsel fulfilled the requirements set forth in *Anders*. Appellant did not file a pro se brief or otherwise respond to counsel's request to withdraw. We shall proceed with an examination of the potential assignments of error set forth by appellant's counsel as well as the entire record below to determine if this appeal lacks merit and is, therefore, wholly frivolous.

11.

## II. Law and Analysis

### Manifest Weight of the Evidence

{¶ 22} In the first potential assignment of error, counsel contends that the trial court's finding was against the manifest weight of the evidence. In support, counsel asserts that the trial court should have extended LCCS's temporary custody rather than grant the agency permanent custody because appellant's potential judicial release would allow her to care for the child in the near future.

{¶ 23} "A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence." *In re A.H.*, 6th Dist. Lucas No. L-11-1057, 2011-Ohio-4857, ¶ 11, citing *In re Andy-Jones*, 10th Dist. Franklin Nos. 03AP-1167 and 03AP-1231, 2004-Ohio-3312, ¶ 28. The factual findings of a trial court are presumed correct since, as the trier of fact, the court is in the best position to weigh the evidence and evaluate the witnesses' testimony. *In re Brown*, 98 Ohio App.3d 337, 342, 648 N.E.2d 576 (3d Dist.1994). Furthermore, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." *Karches v. Cincinnati*, 38 Ohio St.3d 12, 19, 526 N.E.2d 1350 (1988). Thus, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

12.

**{¶ 24}** Revised Code 2151.414 provides a two-part analysis that a court must undertake when considering whether to terminate parental rights and vest permanent custody in a children's service agency. The court must find by clear and convincing evidence:

> (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 of the prior 22 months, or cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on the analysis under R.C. 2151.414(E); and
>
> (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2). *In re R.V.*, 6th Dist. Lucas Nos. L-10-1278 and L-10-1301, 2011-Ohio-1837, ¶ 17.

**{¶ 25}** All of the court's findings under R.C. 2151.414 must be by clear and convincing evidence. "Clear and convincing evidence" is evidence sufficient for the trier of fact to form a firm conviction or belief that the essential statutory elements for a termination of parental rights have been established. *In re Tashayla S.,* 6th Dist. Lucas No. L-03-1253, 2004-Ohio-896, ¶ 14; *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. Clear and convincing evidence is the highest level of evidentiary support necessary in a civil matter. *In re Stacey S.,* 136 Ohio App.3d 503, 520, 737 N.E.2d 92 (6th Dist.1999).

13.

**1. The Child Cannot be Placed with Either Parent Within a Reasonable Time and Should Not be Placed with Either Parent**

{¶ 26} The trial court found by clear and convincing evidence that the child cannot be placed with either parent within a reasonable time and should not be placed with either parent under R.C. 2151.414(B)(1)(a), and identified two different R.C. 2151.414(E) factors that support this conclusion.

{¶ 27} Factor R.C. 2151.414(E)(10) provides: "The parent has abandoned the child." The court found that the father has legally abandoned the child. We find that competent, credible evidence in the record supports this conclusion. LCCS diligently investigated all three potential fathers identified by appellant and concluded that none of them are the biological father.

{¶ 28} Factor R.C. 2151.414(E)(12) provides:

The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.

{¶ 29} The trial court found that R.C. 2151.414(E)(12) applies to appellant, who was incarcerated at the time the motion for permanent custody was filed and at the time of the dispositional hearing, and would not be available to care for the child for at least 18 months after the motion for permanent custody was filed or the dispositional hearing. The court concluded that appellant's unavailability would continue even following her

14.

release from prison because appellant would need to reestablish her life by, at a minimum, finding housing and a source of income before being able to parent the child. We find that competent, credible evidence in the record supports this conclusion.

{¶ 30} Pursuant to the trial court's finding of factors R.C. 2151.414(E)(10) as to the father and R.C. 2151.414(E)(12) as to appellant, we conclude that the trial court did not err in finding by clear and convincing evidence that the child cannot be placed with either parent within a reasonable time and should not be placed with either parent under R.C. 2151.414(B)(1)(a).

## 2. Best Interest of the Child

{¶ 31} The trial court also found clear and convincing evidence under R.C. 2151.414(D)(1) that it is in the best interest of the child to award permanent custody to LCCS for adoptive placement and planning. Under R.C. 2151.414(D)(1), when determining the best interest of a child, the trial court must consider "all relevant factors" including but not limited to the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed * * * through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services

15.

agencies or private child placing agencies for twelve or more months of a

consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and

whether that type of placement can be achieved without a grant of

permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this

section apply in relation to the parents and child * * *.

{¶ 32} The trial court ultimately concluded, under R.C. 2151.414(D)(1), that awarding permanent custody to LCCS is in the child's best interest. Based on the testimony and evidence, the court concluded that the child is doing well in foster care, developmentally on target, and thriving. The court found that the child does not have any special needs, and that all of the child's needs are being met by her caregivers. Although an adoptive home has not yet been identified, the GAL testified that the child is adoptable. Indeed, both the caseworker and the GAL testified that J.J. would be considered as a potential adoptive home if she follows through with the adoption process.

{¶ 33} The court noted that the child needs and deserves permanency. The court found that the child's need for a legally-secure placement could only be achieved by an award of permanent custody to LCCS given that the father has abandoned the child and appellant is incarcerated and will have to reestablish her own life after her release from prison. There was no evidence that appellant will have a home or a job after her release.

16.

The court also reasoned that appellant's potential future judicial release from prison is too tentative to justify delaying permanency for the child.

{¶ 34} The court found that LCCS made reasonable efforts to implement and finalize a permanent placement plan by offering case plan services and by finding an alternative placement for the child. The court noted that LCCS made reasonable efforts to search for potential relatives, but was unable to identify any willing or appropriate relatives for placement.

{¶ 35} After an independent review of the record, we find that there was competent, credible evidence presented to support all of the trial court's findings. We find that appellant's first potential assignment of error is not well-taken.

## B. Suitable Relatives Available for Placement

{¶ 36} Appellant's counsel suggests in the second potential assignment of error that awarding permanent custody to LCCS was inappropriate because there existed suitable relatives to whom the court could have awarded legal custody.

{¶ 37} The availability of relative placement options is one of "all relevant factors" a trial court must consider when deciding if granting permanent custody to a children services agency is in a child's best interest under R.C. 2151.414(D). *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 63. The statute does not require the trial court to find that no suitable relative was available for placement. *Id.* Indeed, "[t]he statute does not make the availability of a placement that would not require

17.

a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than others." *Id.*

{¶ 38} Here, LCCS made numerous and reasonable attempts to locate a suitable relative with whom to place the child, but was ultimately unsuccessful. The agency explored placement with appellant's grandmother, who was not able to care for the child; with appellant's uncle, who had an extensive criminal history that made him unsuitable; and with appellant's cousin who initially wanted custody of the child, but later decided that she was unable to care for the child. Additionally, LCCS found appellant's mother unsuitable for placement because she was incarcerated at the time of the dispositional hearing and because she allegedly threatened J.J. while J.J. was caring for the child. LCCS also considered two of R.S.'s relatives, but when it determined R.S. was not the child's father, they were no longer options for relative placement. LCCS could not consider any paternal relatives as potential placements because the child's father was never identified.

{¶ 39} Appellant did not suggest any other relatives to LCCS for potential placement, although she did suggest placing the child with C.M., her former stepfather. C.M., however, threatened to kill appellant's uncle if the uncle did not give C.M. the child and C.M. was not willing to take custody of the child if LCCS was involved. LCCS reasonably determined that C.M. is not a suitable caretaker for the child.

{¶ 40} Finally, appellant argues that LCCS should have placed the child in the legal custody of J.J., the former girlfriend of appellant's uncle. By all appearances, J.J.'s

18.

home is suitable for the child—neither LCCS nor the GAL objects to J.J. seeking to adopt the child—but J.J. did not file a motion for custody in this case or a petition to adopt the child. As the trial court noted in its order, J.J. would be considered as a potential adoptive home if she expressed an interest and followed through with the adoption process.

{¶ 41} We find that the trial court properly weighed "all relevant factors" when considering the best interest of the child pursuant to R.C. 2151.414(D), including but not limited to the results of LCCS's investigation of numerous alternative placement options with both relatives and nonrelatives, and that competent and credible evidence supports the trial court's conclusion that permanent placement with LCCS is in the best interest of the child.

{¶ 42} We find that appellant's second potential assignment of error is not well-taken.

### III. Conclusion

{¶ 43} This court has thoroughly reviewed the record of proceedings in the trial court, including the trial testimony and exhibits. We find that the trial court's decision was supported by clear and convincing evidence, and was not against the manifest weight of the evidence. Appointed counsel's potential assignments of error are without merit.

{¶ 44} Upon our own independent review of the record, we find no grounds for a meritorious appeal. Accordingly, this appeal is found to be without merit and is wholly

19.

frivolous. Appellant's counsel's motion to withdraw is found well-taken and is hereby granted.

{¶ 45} The October 28, 2016 judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Costs of this appeal are assessed to appellant pursuant to App.R. 24. The clerk is ordered to serve all parties with notice of this decision.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                    _____
                                                              JUDGE

James D. Jensen, P.J.
                                                  _____
Christine E. Mayle, J.                                 JUDGE
CONCUR.

                                                  _____
                                                              JUDGE