[Cite as *In re A.D.*, 2022-Ohio-232.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re A.D., T.D., S.R.                              Court of Appeals No.  L-21-1156

                                                    Trial Court No.  JC21283204

                                                    **<u>DECISION AND JUDGMENT</u>**

                                                    Decided:  January 27, 2022

* * * * *

Bradley W. King, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**ZMUDA, J.**

## I.  Introduction

{¶ 1} This matter is before the court on appeal of the August 10, 2021 decision of

the Lucas County Court of Common Pleas, Juvenile Division, terminating the parental

rights and responsibilities of appellant, E.D., the mother of A.D., T.D., and S.R., and

granting permanent custody of A.D., T.D., and S.R. to Lucas County Children Services. For the reasons that follow, we affirm.

## II. Facts and Procedural Background

{¶ 2} On February 18, 2021, Lucas County Children Services (LCCS) filed a complaint in dependency, abuse, and neglect for A.D., born February 14, 2014, T.D., born January 2, 2015, and S.R., born July 2, 2017. The complaint was a refiling, following dismissal of Lucas County juvenile case No. 18268508 involving A.D., T.D., and S.R., and three of their older, half-siblings. In case No. 18268508 the juvenile court found T.D. to be an abused child and appellant's other children to be dependent children. The children were removed from appellant's custody on June 22, 2018. The father of the three oldest siblings obtained custody of his children. After completing case plan services, appellant was reunited with A.D., T.D., and S.R. on August 3, 2020.

{¶ 3} On February 18, 2021, the children were removed from appellant's custody once more and LCCS filed the current complaint seeking original permanent custody, noting the protective supervision under the prior case and a new domestic violence incident. On May 3, 2021, the juvenile court held a hearing and found the children to be dependent children. Appellant did not appeal this determination. On June 18, 2021, the juvenile court held a trial on the motion for permanent custody. Appellant appeared at trial with counsel, as did A.R., the father of T.D. and S.R.

2.

{¶ 4} The court heard testimony of the case workers, appellant, A.R., and the court-appointed guardian ad litem. The guardian ad litem's report was admitted as evidence. The juvenile court also admitted appellant's Toledo Municipal Court records over appellant's objection.

{¶ 5} The caseworkers testified that appellant has a long history with LCCS, dating back to 2007, and had previously lost custody of five other children, half siblings of A.D., T.D., and S.R. Throughout cases filed in 2007, 2008, 2013, 2014, 2015, and 2018, appellant's case plan services consistently included domestic violence counseling, mental health assessment and treatment, and maintaining stable housing.[1]

{¶ 6} In the current case, the case workers noted appellant's ongoing failure to remedy the same issues. Appellant has a history of volatile relationships, and has been the aggressor in some instances, including an incident of excessive punishment against T.D., prompting the filing of the 2018 case. The children have also witnessed domestic violence between their parents, including the February 2021 incident that, in part, led to the current case.

{¶ 7} Appellant also has mental health diagnoses, but her ambivalent attitude toward therapy and her inconsistency in taking medications prevented her from sustaining progress with her mental health. Appellant's attitude toward therapy also

---

[1] The juvenile court reviewed the prior cases, Lucas County juvenile case Nos. 07134858, 07172497, 08189341, 13233749, 14238402, 15245111, and 18268508.

3.

presented barriers in providing the children with mental health services, despite appellant's acknowledgment that counseling would be helpful to address behavioral issues of the children during periods in which appellant felt overwhelmed. Appellant did not seek counseling for her children while they were in her custody, believing individual therapy unnecessary despite the traumas her children had experienced due to witnessing domestic violence and the circumstances leading to the dependency determinations.

{¶ 8} Finally, appellant demonstrated an inability to secure a stable home for the children despite the efforts of caseworkers and advocates to aid her. Shortly after reunification in August 2020, appellant was evicted in December 2020 after several months of unpaid rent following the loss of her FedEx job.[2] Appellant had also stopped sending the children to protective daycare and school around the time of eviction, and the school withdrew the children for non-attendance at the end of January 2021. After moving, appellant did not immediately notify LCCS of her address at T.D. and S.R.'s paternal grandparents' home where appellant and the children resided until February 2021, when LCCS removed the children. For the duration of the current case, appellant declined to disclose her current address or phone number to her caseworker until the date

---

[2] The record is unclear as to the date appellant lost her job, as there was testimony she lost her job after getting injured in March 2020, or shortly after reunification in August 2020.

4.

of trial, and her current address was with a cousin who had previously been denied as a potential placement for the children.

{¶ 9} Appellant testified and did not dispute the circumstances and events described by caseworkers, including the domestic violence, eviction, and failure to address mental health issues that precipitated the present case. Instead, she emphasized steps taken in the weeks leading up to trial regarding renewed efforts to address her mental health issues and her belief that the children need family counseling, continuing to resist the recommended individual counseling for each child. Specifically, she challenged the failure of LCCS to enroll her children in counseling, arguing such failure reinforced her opinion that counseling was not necessary while ignoring the fact that her children were "disrupted" out of two placements due to their behavioral issues, including suicidal ideation for one of the children.

{¶ 10} As to a stable home, appellant testified she has provided a stable environment for her children, downplaying her history of unstable housing as mere "set-backs." Significantly, appellant acknowledged that the oldest of the children, A.D., has lived in four separate homes with her, in addition to the extensive time spent in foster placements, over the span of her 7 years. Appellant testified she had not yet secured housing, but had leads on potential housing and had been saving money in anticipation of moving into her own home. She also admitted that the 2020 eviction proceedings were causing issues with more traditional lease applications.

5.

**{¶ 11}** Finally, appellant addressed her history of domestic violence as not "bad," and justified her behavior, stating:

> I don't put up with bull crap in front of my kids, period, from nobody. So call it domestic violence or whatever you want. My kids don't see me as an aggressor. My kids see me as right. You don't put up from [sic] bull crap from not a soul in this world, period.

**{¶ 12}** The guardian ad litem testified that she has been assigned to the three children since May 2018, having been appointed during the prior case and then again for the current case. Based on her investigations and interactions with the parents and children, the guardian ad litem recommended permanent custody of the children with LCCS. She testified regarding the children's behavioral issues, resulting from the traumas of unstable housing and living with domestic violence. The guardian ad litem's report was entered into evidence, and noted appellant's history of violent relationships and prior parental terminations as to her five older children. Throughout appellant's history with LCCS, the primary issues raised and not satisfactorily addressed have been appellant's mental health, her lack of stable housing, and domestic violence.

**{¶ 13}** In recommending permanent custody, the guardian ad litem summarized her conclusions regarding the best interests of the children as follows:

> These children have been in and out of care for a significant period of their young lives. [S.R.] has spent almost all of her life in care. The parents

6.

have done some services.  They have made efforts, but we seem to come back to the same place over and over again.  And I think at some point we just have to draw the line and say that it isn't working, and unfortunately I think we're at that point.

{¶ 14} After taking the matter under advisement, the juvenile court granted the motion for permanent custody by written entry on August 10, 2021.  The juvenile court considered the testimony and exhibits, and after noting appellant's lengthy history and prior termination proceedings for older siblings, determined permanent custody for LCCS to be in the best interests of A.D., T.D., and S.R.[3]  While noting the efforts appellant made immediately leading up to trial, the juvenile court deemed those efforts to be "too little, too late."

{¶ 15} Appellant filed a timely appeal of the judgment.

### III.  Assignments of Error

{¶ 16} Appellant raises the following assignments of error in challenging the termination of her parental rights:

> I.  The trial court's finding pursuant to R.C. 2151.414(E)(1) that mother failed continuously and repeatedly to substantially remedy mother's mental and emotional health issues thereby causing the children to be

---

[3] The juvenile court made this determination as to the father of A.D. and the father of T.D. and S.R., too, and neither father has appealed the decision.

7.

placed outside the children's home was not supported by clear and convincing evidence.

II. The trial court's finding pursuant to R.C. 2141.414(E)(2) that mother's mental and emotional health issues are so chronic, severe and persistent that it makes her unable to provide an adequate permanent home for the children at the present time and, as anticipated, within one year after the court holds the hearing was not supported by clear and convincing evidence.

III. The trial court's finding pursuant to R.C. 2151.414(E)(4) that mother has demonstrated a lack of commitment toward the children by failing maintain [sic] the children's school enrollment and by not following through with counseling for the children was not supported by clear and convincing evidence.

IV. The trial court's finding pursuant to R.C. 2151.414(E)(14) that mother is unwilling to provide shelter for the children by failing to provide an adequate permanent home was not supported by clear and convincing evidence.

## IV. Analysis

{¶ 17} Appellant challenges the award of permanent custody to LCCS, arguing a lack of clear and convincing evidence that termination of parental rights would be in the

8.

children's best interest. She also argues that LCCS had no basis to remove the children in 2020, because she was successfully reunited with the children after completing her case plan in the 2018 case and LCCS "reneged on an agreed two-month window" during the final review hearing in case No. 18268508 for appellant to re-enroll the children in daycare and school, initiate counseling for the children, re-engage in counseling for herself, and secure a new job and long-term housing.[4] Appellant fails to address any finding by the juvenile court regarding domestic violence.

{¶ 18} In reviewing a decision to terminate parental rights in a permanent custody case, we will not reverse unless we find the decision is against the manifest weight of the evidence. *In re D.T.,* 6th Dist. Lucas No. L-20-1019, 2020-Ohio-2968, ¶ 19, citing *In re A.H.,* 6th Dist. Lucas No. L-11-1057, 2011-Ohio-4857, ¶ 11 (additional citation omitted.). Reversal is proper only after the reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." (Citation omitted) *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

---

[4] Appellant cites to no portion of the record containing any agreement for a two-month window.

9.

{¶ 19} The juvenile court, as the trier of fact, is best positioned to weigh evidence and evaluate testimony, and therefore must be afforded "every reasonable intendment and every reasonable presumption * * * in favor of the judgment and the finding of facts." *In re C.R.,* 6th Dist. No. L-20-1195, 2021-Ohio-1969, ¶ 32, citing *In re Brown,* 98 Ohio App.3d 337, 342, 648 N.E.2d 576 (3d Dist.1994); *Eastley v. Volkman,* 132 Ohio St.3d 328, 2021-Ohio-2179, 972 N.E.2d 517, ¶ 21 (additional citation omitted.). A juvenile court must find, by clear and convincing evidence, that terminating parental rights and awarding permanent custody to a children services agency satisfies the permanent custody test set forth in R.C. 2151.414. *In re Katrina T.,* 6th Dist. Sandusky No. S-03-024, 2004-Ohio-3164, ¶ 13. Clear and convincing evidence is defined as "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re K.H.,* 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42, quoting *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 20} The two-part test of R.C. 2151.414 requires the juvenile court to find, by clear and convincing evidence, that:

> (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 of the prior 22 months, or cannot be

10.

placed with either parent within a reasonable time or should not be placed

with either parent, based on the analysis under R.C. 2151.414(E); and

> (2) that the grant of permanent custody to the agency is in the best

interest of the child, based on an analysis under R.C. 2151.414(D).

*In re A.J.,* 6th Dist. Lucas No. L-16-1258, 2017-Ohio-1392, ¶ 24, citing R.C.

2151.414(B)(1) and 2151.414(B)(2); *In re R.V.,* 6th Dist. Lucas Nos. L-10-1278 and L-

10-1301, 2011-Ohio-1837, ¶ 17; *see also In re Schaefer,* 111 Ohio St.3d 498, 2006-Ohio-

5513, 857 N.E.2d 532, ¶ 33-36, 56.

{¶ 21} The juvenile court first determined that the children had been in the

temporary custody of LCCS "for well over 12 months of the past 22 months" and were in

the home of appellant "for less than seven months in the past 22 months[.]" The juvenile

court further determined that "[t]here is no reasonable likelihood that the circumstances

will change in favor of placing the children with either parent within any reasonably

foreseeable time." In granting permanent custody to LCCS, the juvenile court referenced

the factors under R.C. 2151.414(E)(1), (2), (4), (14), and (16).[5] These provisions are as

follows:

---

[5] The juvenile court also referenced R.C. 2151.414(E)(10), "The parent has abandoned the child." This appears to pertain only to the putative father of A.D., who did not appear for trial or at any point in the proceedings despite notice. Additionally, the juvenile court referenced R.C. 2151.414(E)(16), the "any other reason" provision, but did not expressly state an additional reason.

11.

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

* * *

12.

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

＊ ＊ ＊

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

(16) Any other factor the court considers relevant.

{¶ 22} Appellant challenges only the juvenile court's findings under R.C. 2151.414(E), raising similar arguments regarding the weight of the evidence supporting those findings. The assignments of error can be summarized as challenging the juvenile court's finding that appellant failed to maintain housing, resulting from either conditions not remedied (assignment of error one), appellant's mental illness (assignment of error two), or appellant's unwillingness (assignment of error four), and challenging the finding that appellant demonstrated a lack of commitment toward her children (assignment of error three). As the issues and facts are interrelated, we address the assignments of error together.

13.

**{¶ 23}** In awarding permanent custody of A.D., T.D., and S.R. to LCCS, the juvenile court provided numerous factual findings in support. The juvenile court noted that "issues leading to removal of the children from the custody of their mother, [appellant], have been essentially the same since 2007, to wit: lack of stable housing; noncompliance with needed mental health services; and domestic violence." The juvenile court further found that appellant had significant mental health issues and had not "followed through on a consistent and needed basis with mental health treatment." As to the issues leading up to removal of the children and the present complaint for permanent custody, the juvenile court found:

> According to the Guardian ad litem, shortly after reunification last August, [appellant] lost her job which led to her eviction. Further, [appellant] stopped engaging in mental health treatment and did not insure that the children were going to school which was online during COVID-19. The school-age children were withdrawn from school for non-attendance after it was discovered by the school assistant principal that the house where the children were supposed to be residing was vacant. Further, the phone number provided to school officials was a nonworking number. It was also reported that a computer provided to the children by the school was lost. [Appellant] failed to keep the children in their counseling services. Further, [appellant] did not contact the Guardian ad litem or her

14.

caseworker to seek help and/or to keep the Guardian ad litem and the caseworker informed as to her whereabouts and the status of the children with respect to counseling and schooling. On January 13, 2021, the Court held a review hearing in case number 18268508 at which [appellant] failed to appear. The Court became aware that [appellant] had been feeling overwhelmed, that she had no cell service for her phone for several weeks and that she was being evicted from her residence. Further, the caseworker believed that the children had not been attending daycare consistently as was arranged and required in the case plan. At that hearing on January 13, 2021, the Court ordered LCCS and the Guardian ad litem to obtain documentation of the children's school progress, their school attendance, their daycare attendance, their service(s) participation/attendance, and the status of mother's pending eviction. That information was to be brought to Court for another review hearing which was scheduled for on [sic] February 17, 2021.

LCCS subsequently became aware of several other serious and immediate concerns for the children's well-being. These concerns, as outlined in the testimony before the Court on February 17, 2021, included severe absences from school, failing to attend protective daycare, unstable housing, and a lack of participation in counseling services for both

15.

[appellant] and her three youngest children.  Based on these new concerns for the family and the children, the Court issued an ex parte award of emergency custody to LCCS.  Consequently, LCCS filed the Complaint in this case (JC No. 21283204) on February 18, [2021] in which LCCS has requested permanent custody of AD, TD, and SR.

Based on these and other facts, determined at trial, the juvenile court considered the R.C. 2151.414(E) provisions and found, as follows:

It does not appear as though either parent is likely to become capable of caring for these children within a reasonable period of time.  [Appellant] continues to have mental health problems and has failed reasonably or effectively to address those problems.  [Appellant's] mental and emotional health issues are so chronic, severe, and persistent that it makes her unable to provide an adequate permanent home for her children at the present time, and, as anticipated, she will be unlikely to do so within one year after the date of this hearing.  [Appellant] has consistently and repeatedly failed to remedy in a substantial manner the conditions causing these children to be placed outside of her home.  [Appellant] has also demonstrated a lack of commitment towards these children by failing to properly school the school-age children and by not following through with counseling for the children.  Further, [appellant] has shown no willingness or ability to

16.

provide an adequate permanent home for these children. * * * The parents both testified that they are now moving forward on many of the case plan goals and objectives. However, it can be said that both parties have done too little, too late.

{¶ 24} Within her assignments of error, appellant argues she made sure her children were never homeless while they were with her, and she has always been willing to provide them a home. In support, appellant highlights her efforts to seek out shelters, relatives, and other housing options to avoid homelessness. However, appellant appears to define "stable housing" as including all arrangements short of homelessness.

{¶ 25} Based on the record, appellant was evicted from her home after falling several months behind in her rent. She arranged a month-to-month situation with A.R.'s parents while she looked for a new place to live. The guardian ad litem and caseworkers were given little notice of the impending eviction, and appellant did not keep them informed of her move. After the children were removed from her custody, appellant herself acknowledged her difficulties in finding a new home at trial, based on a prior eviction. At the time of trial, appellant presented no evidence of housing, but instead was residing with a relative who had been denied as a placement for A.D., T.D., and S.R.

{¶ 26} Appellant also did not demonstrate any commitment to addressing her mental health issues. She admitted to her diagnoses, but also argued she did not need individual counseling and could better handle her issues by herself. In minimizing her

17.

mental health issues, appellant argued that these issues did not cause her children to be homeless, without addressing the issue of her ability to provide stable housing within the year. The juvenile court, however, found appellant's attitude toward her mental health issues to demonstrate an impediment to a permanent home and to demonstrate appellant's unwillingness to provide her children with a stable home.

{¶ 27} In addition to the housing issue, appellant argues that she would have re-enrolled the children in school and daycare had they not been removed the day after the final review hearing, believing she had a "window" to do so. Therefore, appellant argues, her failure to re-enroll the children could not be interpreted as a lack of commitment as stated at R.C. 2151.414(E)(4). However, R.C. 2151.414(E)(4) makes no mention of schooling or counseling for the child, but instead addresses factors pertaining to *the parents* that would lead a court to believe reunification is possible "within a reasonable time." To the extent appellant argues a future desire to comply with schooling and counseling objectives, therefore, such argument has no bearing on the juvenile court's finding under R.C. 2151.414(E)(4).[6]

---

[6] While not argued by appellant, schooling, daycare, and counseling could be considered "other basic necessities" as listed at R.C. 2151.414(E)(14). The record is replete with evidence of appellant's unwillingness to engage mental health services for her children as recommended, and would also support an inference that appellant was unwilling to send the children to school or protective daycare.

18.

{¶ 28} The juvenile court found R.C. 2151.414(E)(1), (2), (4), and (14) applied, and the record supports this finding by clear and convincing evidence. Based on the record, including appellant's own testimony, appellant failed "continuously and repeatedly" to remedy three issues: lack of stable housing, lack of consistent mental health treatment, and domestic violence. Appellant's mental health issues, moreover, were demonstrated as "so severe" that it prevented appellant from providing "an adequate permanent home" within the year. Appellant's attitude toward her mental health treatment also "demonstrated a lack of commitment" toward and unwillingness to provide stable housing. This attitude, finally, manifested as apathy and noncompliance regarding the recommended mental health treatment for her children.

{¶ 29} Therefore, upon due consideration of the record, we find the juvenile court's judgment awarding permanent custody to LCCS was supported by clear and convincing evidence. Appellant's assignments of error are not well-taken.

### III. Conclusion

{¶ 30} Having found that the juvenile court committed no error prejudicial to appellant, and that substantial justice has been done, we affirm the judgment of the Lucas County Court of Common Pleas, Juvenile Division. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

19.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Thomas J. Osowik, J.

Gene A. Zmuda, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

20.