[Cite as *In re A.B.*, 2021-Ohio-3463.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE A.B.

A Minor Child

[Appeal by Mother, A.S.]

: 
: 
: 
: 
:

No. 110409

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 30, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD-19-913018

---

***Appearances:***

Valore & Gordillo, L.L.P., and Michael Gordillo, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} Appellant appeals the juvenile court's determination to award permanent custody of her child, A.B., to the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the Agency"). We find the juvenile court's determination to terminate parental rights and award permanent custody to the Agency was based on competent, credible evidence and that the juvenile court did

not abuse its discretion in determining that permanent custody was in A.B.'s best interests.  Accordingly,  we affirm the judgment of the juvenile court.

I.    STATEMENT OF THE CASE

A.  PROCEDURAL HISTORY

{¶ 2}    On October 25, 2019, the Agency filed a complaint alleging A.B. was a neglected child.   After a hearing, temporary custody of A.B. was granted to CCDCFS.   Later, an adjudicatory hearing was held and A.B. was adjudged to be neglected and was placed in the temporary custody of CCDCFS.  On May 21, 2020, a motion seeking permanent custody was filed by the Agency.

{¶ 3}    On November 20, 2020, appellant filed a motion to extend temporary custody or in the alternative, for legal custody to maternal great-grandmother. On March 8, 2021, appellant filed a motion seeking to have legal custody of A.B. granted to A.B.'s maternal grandmother.  On March 16, 2021, a hearing was held on the motions pending before the court.   After the hearing, the trial court terminated appellant's parental rights and placed A.B. in the permanent custody of CCDCFS.

B.  FACTS PRESENTED AT HEARING

{¶ 4}    At the onset of the hearing, appellant acknowledged through counsel that she was not in a position to personally take custody of A.B. and asked that permanent placement be denied to the Agency, but that the juvenile court should consider granting custody to D.O., A.B.'s maternal great-grandmother, or to D.B., A.B.'s maternal grandmother.   Kaitlin Konicek, a clinical supervisor at Pressley Ridge, a foster care agency, testified that she was A.B.'s treatment coordinator from

the fall of 2019 through January 2021. She testified that the Agency became involved with A.B. due to concerns over substance abuse by appellant and that A.B. was first placed with D.O. After D.O. could no longer care for A.B., Pressley Ridge became involved with A.B. and A.B. was placed with a foster home licensed for children with a higher level of needs. At the time of placement, A.B., then two years old, exhibited "extreme behaviors for [a child of A.B.'s] age" to include exhibiting extreme temper tantrums, aggressive behavior towards another child in the home, and would "cuss and scream" at the foster parents. Konicek testified that these were learned behaviors.

{¶ 5} Konicek further testified that by the time of the hearing, A.B. had been diagnosed with PTSD and a treatment plan had been in place. A.B. and the foster family were referred for individual therapy. A.B. showed improvement in behavior while in foster care with the intensity of the tantrums subsiding and becoming more age-typical. The foster family was in constant contact with D.O. and D.B. during the placement. This foster family had also fostered one of D.B.'s children in the past. She further testified that A.B. was very bonded with the foster family.

{¶ 6} Lakeisha Outlaw, an Agency investigator testified that she was assigned to investigate A.B. due to concerns that appellant was in jail and that the grandparents were not able to care for A.B. She learned that D.O. and D.B. were sharing A.B.'s care and that the child split time between the two. She further testified that A.B. would hit or bite other children in the home and have

overwhelming temper tantrums. Outlaw further testified that A.B.'s father declined to provide care.

{¶ 7} Carla Vincent, an Agency social worker testified that appellant had recurring issues with substance abuse including abuse of cocaine, heroin, fentanyl, and marijuana. Appellant did not engage in any treatment after being referred to CCDCFS, but appellant did report being in treatment. Appellant attended two parenting classes in the past, but did not continue with those classes. She further testified that appellant did not complete services outlined in a case plan and at the time of trial resided at times with her mother or grandmother.

{¶ 8} Vincent testified appellant did not engage in regular visitation with A.B. during the temporary placement, nor did appellant contact the social worker to check on A.B.'s welfare. Appellant visited twice with A.B. in July 2020, but thereafter "just disappeared" then contacted the social worker in October 2020, but visitation with A.B. did not resume until February 2021. She testified that D.O. visited with A.B. weekly and that D.B. visited occasionally. As to A.B.'s current placement, she testified that she had observed A.B. with the foster family, that they have a very healthy attachment, and believed permanent custody of A.B. was in the best interests of the child.

{¶ 9} Vincent also testified that the Agency investigated family placements for A.B. and that D.O. had a prior child endangering conviction. In that matter, D.O. allowed her then 14-year-old to drive a car with two younger children as passengers. D.B. was investigated as a possible placement and was found to have a history with

the Agency in 2015 where her daughter was placed in temporary custody and that D.B. had been referred for inpatient treatment.

{¶ 10} Appellant presented the testimony of D.O. and D.B. in support of her motion for custody to be placed with them. D.O. testified that she owned a three-bedroom mobile home and is retired. She testified she was very close with A.B. She acknowledged that she was wrong regarding the facts of her child endangering case and that her daughter, D.B., had a heroin problem in the past and had her own children removed, but eventually regained custody of all her children.

{¶ 11} D.B. testified that she knows the foster family and accused one of the caregivers of being drunk and physically abusive to A.B. in December 2020. Despite that, she allowed the foster caregiver to take her own two-year-old out of state days before the trial began. She testified that she was involved with CCDCFS due to heroin use, but had been sober for three years and completed her case plan and now had custody of her four children.

{¶ 12} The Guardian ad litem provided a report to the court, recommended permanent custody be granted to the Agency, and testified that nothing in the trial testimony altered that recommendation.

{¶ 13} The juvenile court terminated appellant's parental rights and granted permanent custody of A.B. to the Agency. In so ordering, the juvenile court determined that A.B. was in the custody of a public children services agency or private agency for twelve or more months of a consecutive twenty-two month period and that the child was abandoned by the father. The court further found that A.B.'s

parents had failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside A.B.'s home and that appellant could not provide an adequate permanent home within one year. Further, the court found A.B.'s parents failed to regularly visit or communicate with A.B. when able, and "[t]hat one or more of the factors in division (E) of section 2151.414 of the Revised Code exist and the child cannot be placed with one of the child's parents within a reasonable period of time or should not be placed with either parent" and "a grant of permanent custody is in the best interests of the child."

{¶ 14} In addressing appellant's motions for the placement of custody with D.O. or D.B., the juvenile court found that:

> The Court finds that the maternal family has had a significant substance abuse history which likely has contributed to generational trauma, substance abuse, and poor decision making and impacts their ability to protect the child. The grandparents had been overwhelmed by the child's behavior; and while there has been significant progress in addressing the child's mental health, including reducing aggression, tantruming [sic] to more age appropriate behavior, they appear to minimize the presence of these behaviors and overestimate their efforts and relationship with the child to meet her needs.

## II. LAW AND ARGUMENT

{¶ 15} Appellant's sole assignment of error reads:

> The trial court's award of permanent custody and termination of appellant's parental rights is against the manifest weight of the evidence.

{¶ 16} Appellant argues that the juvenile court's decision was not in the best interest of A.B. and an abuse of discretion where the evidence at the hearing demonstrated a secure, permanent placement with A.B.'s great-grandmother or

grandmother and thus, the decision to award permanent custody to CCDCFS was against the manifest weight of the evidence. The Agency argues that the juvenile court's determination was supported by competent, credible evidence in awarding custody and that the trial court did not abuse its discretion in determining the best interests of the child.

{¶ 17} A juvenile court's decision to grant permanent custody will not be reversed as being against the manifest weight of the evidence when the record contains competent, credible evidence by which it could have found that the essential statutory elements for an award of permanent custody have been established. *In re B.P.*, 8th Dist. Cuyahoga Nos. 107732 and 107735, 2019-Ohio-2919. R.C. 2151.414(B) provides that permanent custody of a child may be awarded to a children services agency if the court finds, by clear and convincing evidence, that (1) it is in the best interest of the child to grant permanent custody of the child to the agency, and (2) that any of the conditions listed in R.C. 2151.414(B)(1)(a)-(e) apply.

{¶ 18} In this case, appellant does not contest that the juvenile court could find that one of the factors listed in R.C. 2151.414(B)(1)(a) − (e) was present. We note that the juvenile court found that A.B. could not be placed with a parent within a reasonable period of time or should not be placed with either parent. This finding satisfies one of the conditions listed in R.C. 2151.414(B)(1)(a) and was supported by testimony that appellant had recurring issues with substance abuse, did not engage in any treatment after being referred, and was unable to meet the basic needs of A.B. due to her unemployment and unstable housing.

**{¶ 19}** Before granting permanent custody to the Agency, and in addition to finding one or more of the conditions in R.C. 2151.414(B)(1), the juvenile court was also required to determine if the grant of permanent custody was in A.B.'s best interests. In making this determination, the juvenile court was to consider "all relevant factors," including, but not limited to the following, (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents, and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and (5) whether any of the factors set forth in R.C. 2151.414(E)(7) to (11) apply. R.C. 2151.414(D)(1)(a)-(e).

**{¶ 20}** In conducting a best-interest analysis under R.C. 2151.414(D), "[t]he court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors. There is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. R.C. 2151(D)(1) reads:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b)     The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c)     The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d)     The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e)     Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 21} The juvenile court found that A.B.'s best interests were met by awarding permanent custody to the Agency and its order demonstrates that it considered the relevant factors pursuant to R.C. 2151.414(D).  Under R.C. 2151.414(D)(1)(a), the record contained evidence that A.B. had a strong relationship with her foster caregivers and that a bond had been formed.  Further, the testimony indicated that the foster caregivers had put forth significant efforts with A.B. to include participating in counseling.  R.C. 2151.414(D)(1)(b) requires consideration of the child's wishes, however, A.B. was too young to meaningfully inform the court.  The court could consider the opinion of the GAL in considering this factor.  *See In re B/K Children*, 1st Dist. Hamilton No. C-190681, 2020-Ohio-1095, ¶ 45 ("The juvenile court properly considers the GAL's recommendation on the permanent-

custody motion as part of the R.C. 2151.414(D)(1)(b) analysis where the children are too young to express their wishes."). As to the consideration under R.C. 2151.414(D)(1)(c) of A.B.'s custodial history, the record reflects that A.B. was first placed with D.O., but that it was not an appropriate placement and thereafter A.B. was placed with the foster family. In total, A.B. had been in Agency custody for over a year at the time of the hearing.

{¶ 22} R.C. 2151.414(D)(1)(d), required the juvenile court to consider the need for a permanent placement and whether or not that placement could be achieved without custody being granted to the Agency. Appellant conceded at the onset of the hearing that she was unable at the time of the hearing to take custody of A.B. Further, in considering placement with appellant's family, the trial court determined that

> the maternal family has had a significant substance abuse history which likely has contributed to generational trauma, substance abuse, and poor decision making and impacts their ability to protect the child. The grandparents had been overwhelmed by the child's behavior; and while there has been significant progress in addressing the child's mental health, including reducing aggression, tantruming [sic] to more age appropriate behavior, they appear to minimize the presence of these behaviors and overestimate their efforts and relationship with the child to meet her needs.

R.C. 2151.414(D)(1)(e) further required the juvenile court to consider whether any factor listed in R.C. 2151.414(E)(7)-(11) was present; the trial court determined that A.B. was abandoned by appellant pursuant to R.C. 2151.414(E)(10).

{¶ 23} Appellant argues that the trial court's determination that permanent custody was in A.B.'s best interests was against the manifest weight of the evidence

when considering that both D.O. and D.B. had the ability to provide for A.B. and both were willing to accept permanent custody. However, evidence that a family member is willing to take custody does not alleviate the court from considering all factors in determining whether permanent custody should be granted to a public services agency. In *In re E.C.*, 8th Dist. Cuyahoga No. 103968, 2016-Ohio-4870, in which a grandparent sought custody of his grandchildren, this court noted:

> We find [grandfather's] willingness exemplary. We must distinguish here by emphasizing that "a child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security." *In re M.S.*, 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, ¶ 11, citing *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 324, 574 N.E.2d 1055 (1991). The willingness of a relative to care for a child does not alter what a court considers in determining whether to grant permanent custody. *Id.*, citing *In re A.D.* at ¶ 12. The court is not required to favor a relative if, after considering all R.C. 2151.414(D) factors, it is in the child's best interest for the agency to be granted permanent custody. *Id.*, citing *In the Matter of B.H.,* 5th Dist. Fairfield No. 14-CA-53, 2014-Ohio-5790, ¶ 72. As the Ohio Supreme Court instructed in *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, in deciding what is in a child's best interests, R.C. 2151.414 does not make the availability of a relative placement an all-controlling factor; the statute does not even require the court to weigh that factor more heavily than other factors. *Id.* at ¶ 63.

*Id.* at ¶ 39.

{¶ 24} Here, we also acknowledge D.O. and D.B.'s willingness to accept custody of A.B. However, there was evidence that placement with or a grant of custody to D.O. and D.B. was not in A.B.'s best interest. Because the juvenile court considered the appropriate factors in determining whether or not to award the Agency permanent custody and the record supports the juvenile court's grant of permanent custody, appellant's sole assignment of error is overruled.

III.   CONCLUSION

{¶ 25} Our review of the record reflects that the juvenile court considered the relevant statutory factors in determining the best interest of the child pursuant to R.C. 2151.414 and did not abuse its discretion.  We further find the juvenile court's decision to grant permanent custody to CCDCFS and terminate parental rights is supported by competent, credible evidence and is not against the manifest weight of the evidence.

{¶ 26} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
EILEEN T. GALLAGHER, J., CONCUR